IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

SPRINGFIELD DIVISION

| | | |
|---|---|---|
| STEPHEN FOOTE, individually, and as Guardian and next friend of B.F. and G.F. minors, MARISSA SILVESTRI, individually and as Guardian and next friend of B.F. and G.F., minors, JONATHAN FELICIANO, SANDRA SALMERON, | ) ) ) ) ) ) ) ) | Case No. 3:22-cv-30041 VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND DAMAGES |
| Plaintiffs, | ) ) ) | JURY TRIAL REQUESTED |
| v. | ) ) | |
| LUDLOW SCHOOL COMMITTEE, LISA NEMETH, in her official capacity as Interim Superintendent of Ludlow Public Schools, TODD GAZDA, individually, and in his official capacity as former Superintendent of  Ludlow Public Schools, STACY MONETTE, individually and in her official capacity as Principal of Baird Middle School, MARIE-CLAIRE FOLEY, individually and in her official capacity as school counselor for Baird Middle School) JORDAN FUNKE, individually and in her official capacity as former librarian at Baird Middle School, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiffs, Stephen Foote, individually, and as Guardian and next friend of B.F. and G.F., minors, Marissa Silvestri, individually and as Guardian and next friend of B.F. and G.F., minors, Jonathan Feliciano, and Sandra Salmeron, by and through their attorneys of record, file their Complaint against Ludlow School Committee, Lisa Nemeth, Todd Gazda, Stacy Monette, Marie-Claire Foley, and Jordan Funke, Defendants, and in support thereof, allege as follows:

## INTRODUCTION

1.     Defendants have exceeded the bounds of legitimate pedagogical concerns and usurped the role of Plaintiffs Stephen Foote and Marissa Silvestri, Jonathan Feliciano and Sandra Salmeron, and other parents in the Town of Ludlow to direct the education and upbringing of their children, make medical and mental health decisions for their children, and to promote and preserve family privacy and integrity.

2.     Defendants' protocol and practice of concealing from parents information related to their children's gender identity and efforts to affirm a discordant student gender identity at school violates parents' fundamental rights under the United States and Massachusetts constitutions and violates children's reciprocal rights to the care and custody of their parents, familial privacy, and integrity. As to Plaintiffs Jonathan Feliciano and Sandra Salmeron, it also violates

their fundamental right to free exercise of religion under the United States and Massachusetts constitutions.

3.     Plaintiffs Stephen Foote and Marissa Silvestri are seeking injunctive and declaratory relief and damages under 42 U.S.C. §1983 on behalf of themselves and their minor children, B.F. and G.F., for violation of their constitutional rights. Plaintiffs Jonathan Feliciano and Sandra Salmeron are seeking injunctive and declaratory relief and damages under 42 U.S.C. §1983 for violation of their constitutional rights. Plaintiffs also seek costs and attorneys' fees pursuant to 42 U.S.C. §1988.

## JURISDICTION AND VENUE

4.     This action is filed pursuant to 42 U.S.C. § 1983 seeking redress of injuries suffered by Plaintiffs from deprivation, under color of state law, of rights secured by the Fourteenth Amendment to the United States Constitution, by the laws of the United States and the laws of Massachusetts. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a). Jurisdiction is also proper under 28 U.S.C. § 1332(a)(1) in that the amount in controversy exceeds $75,000 and is between citizens of different states.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and other applicable law because the events and omissions giving rise to the claims in this action arose in the Town of Ludlow, Massachusetts which is situated within the

district and divisional boundaries of the Springfield Division of the U.S. District Court for the District of Massachusetts. Venue is also proper in this Court because Defendants reside or have their principal place of business in this District.

6.     This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, implemented through Federal Rule of Civil Procedure 57, and to issue injunctive relief under Federal Rule of Civil Procedure 65.

7.     An actual controversy exists between the parties involving substantial constitutional issues, in that Plaintiffs allege that Defendants' policies, procedures, directives and actions taken in accordance with them, on their face and as applied, violate the United States Constitution and have infringed Plaintiffs' rights, while Defendants will allege that their policies, procedures, directives, and actions comport with the Constitution and Massachusetts law.

8.     This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, including a reasonable attorney's fee, under 42 U.S.C. § 1988.

**PARTIES**

9.     Stephen Foote is a resident of the Town of Ludlow and is the father of B.F. and G.F., minor children who are students in Ludlow Public Schools.

10.     Marissa Silvestri is a resident of Connecticut and is the mother of B.F. and G.F., minor children who are students in Ludlow Public Schools.

3

11.    B.F. is the daughter of Stephen Foote and Marissa Silvestri and at all times relevant to the claims set forth herein was and is a student in Ludlow Public Schools.

12.    G.F. is the son of Stephen Foote and Marissa Silvestri and at all times relevant to the claims set forth herein was and is a student in Ludlow Public Schools.

13.    Jonathan Feliciano is a resident of the Town of Ludlow, the husband of Sandra Salmeron, and is the father of two children who attend Ludlow Public Schools.

14.    Sandra Salmeron is the wife of Jonathan Feliciano, a resident of the Town of Ludlow, and the mother of two children who attend Ludlow Public Schools.

15.    Defendant Ludlow School Committee, with a principal address of 63 Chestnut Street, Ludlow, MA 01056, is a municipal public body of the Town of Ludlow. Pursuant to G.L. c. 43, § 33, the School Committee is authorized to make all reasonable rules and regulations, consistent with law, for the management of the public schools of the Town of Ludlow.

16.    Defendant Lisa Nemeth is the Interim Superintendent of Ludlow Public Schools. Pursuant to G.L. c. 71 § 59 Superintendent Nemeth is required to manage the school district in a fashion consistent with the United States and Massachusetts constitutions, state law and the policy determinations of the school committee.

4

17.     Defendant Todd Gazda was at all times relevant herein the Superintendent of Ludlow Public Schools until July 2021. Pursuant to G.L. c. 71 §59 until July 2021, Defendant Gazda was required to manage the school district in a fashion consistent with United States and Massachusetts constitutions, state law and the policy determinations of the school committee. He is sued in his individual and official capacities.

18.     Defendant Stacy Monette is, and at all relevant times was, Principal at Baird Middle School, which is part of Ludlow Public Schools. She is sued in her individual and official capacities.

19.     Defendant Marie-Claire Foley is, and at all relevant times was, School Counselor at Baird Middle School, which is part of Ludlow Public Schools. She is sued in her individual and official capacities.

20.     Defendant Jordan Funke was at all times relevant to Plaintiffs' claims, until May 2021, librarian at Baird Middle School, which is part of Ludlow Public Schools. She is sued in her individual and official capacities.

## STATEMENT OF FACTS

21.     Effective July 1, 2012, Massachusetts General Law (G.L.) Chapter 76, §5 was amended to include "gender identity" as a protected class:

No person shall be excluded from or discriminated against in admission to a public school of any town, or in obtaining the advantages,

privileges and courses of study of such public school on account of race, color, sex, gender identity, religion, national origin or sexual orientation.

22.    In June 2012, the Massachusetts Board of Elementary and Secondary Education (Board) adopted revised Access to Equal Education Opportunity Regulations, 603 CMR 26.00 to reflect the broadened student anti-discrimination provision in G.L. c. 76, §5.

23.    The Board also directed the Department of Elementary and Secondary Education ("DESE") to provide guidance to school districts to assist in implementing the gender identity provision.

24.    In response to the Board's directive, DESE published "Guidance for Massachusetts Public Schools Creating a Safe and Supportive School Environment," ("Guidance") offering advice and suggestions for school policies and procedures to address the changes in laws and regulations.

25.    The Guidance document has not been adopted as a regulation nor enacted as a statute.

26.    In the Guidance, DESE suggests that:

Consistent with the statutory standard, a school should accept a student's assertion of his or her gender identity when there is "consistent and uniform assertion of the gender-related identity, or any other evidence that the gender-related identity is sincerely held as part of a person's core identity." If a student's gender-related identity, appearance, or behavior meets this standard, the only circumstance in which a school may question a student's asserted gender identity is where school personnel have a credible basis for believing that the

student's gender-related identity is being asserted for some improper purpose. https://www.doe.mass.edu/sfs/lgbtq/ GenderIdentity.html 3/7

27.     The Guidance further suggests:

Some transgender and gender nonconforming students are not openly so at home for reasons such as safety concerns or lack of acceptance. School personnel should speak with the student first before discussing a student's gender nonconformity or transgender status with the student's parent or guardian. For the same reasons, school personnel should discuss with the student how the school should refer to the student, *e.g.,* appropriate pronoun use, in written communication to the student's parent or guardian. *Id.*

28.     In the Guidance, DESE states that in the case of "young students" parents should be consulted regarding issues of disclosure of the students' assertion of a discordant gender identity. *Id.* The Guidance does not define "young students."

29.     DESE's Guidance also says:

Transgender and gender nonconforming students may decide to discuss and express their gender identity openly and may decide when, with whom, and how much to share private information. A student who is 14 years of age or older, or who has entered the ninth grade, may consent to disclosure of information from his or her student record. **If a student is under 14 and is not yet in the ninth grade, the student's parent (alone) has the authority to decide on disclosures and other student record matters.**

*Id.* (emphasis added) (citing Section 23.01 of Title 603 of the Code of Massachusetts Regulations (603 CMR§23.01).

30.     Information regarding a student's sex, name change for gender identity purposes, gender transition, medical or mental health treatment related to gender

identity, or any other information of a similar nature, regardless of its form, is part of the individual's student record, subject to 603 CMR §23.01.

31.   Pursuant to 603 CMR §23.01 consent to disclosure of information regarding a student's sex, name change for gender identity purposes, gender transition, and/or medical or mental health treatment related to gender identity lies with parents alone until the student is in ninth grade or age 14, unless a local school committee has adopted an alternative policy.

32.   Plaintiffs are informed and believe and based thereon allege that Ludlow Public Schools has not adopted a formal written policy superseding 603 CMR §23.01 to provide students under the age of 14 or below grade 9 with the sole authority to give or withhold consent to disclosure of information regarding sex, name change for gender identity purposes, gender transition or medical or mental health treatment related to gender identity.

33.   Plaintiffs are informed and believe and based thereon allege that Defendant School Committee has interpreted the DESE Guidance statements that

> School personnel should speak with the student first before discussing a student's gender nonconformity or transgender status with the student's parent or guardian. For the same reasons, school personnel should discuss with the student how the school should refer to the student, e.g., appropriate pronoun use, in written communication to the student's parent or guardian.

to mean that school personnel are prohibited from notifying the parents of a student of any age about their child's gender nonconformity or transgender status unless the student consents to his or her parents being notified. Plaintiffs are informed and believe and based thereon allege that Defendant School Committee has approved and instructed district administrators to implement a protocol that school personnel cannot discuss a child's gender nonconformity or transgender status with the child's parents unless the child consents (the "Protocol").

34.     Plaintiffs are informed and believe and based thereon allege that until July 2021 Defendant Gazda as Superintendent of Ludlow Public Schools implemented the Protocol throughout Ludlow Public Schools and directed administrators, teachers, counselors and other staff at all schools to adhere to the Protocol by not notifying parents regarding their child's gender nonconformity or transgender status unless the child had consented to his or her parents being notified.

35.     Plaintiffs are informed and believe and based thereon allege that from July 2021 to the present Defendant Nemeth, as Interim Superintendent of Ludlow Public Schools, has implemented the Protocol throughout Ludlow Public Schools and directed administrators, teachers, counselors and other staff in all district schools to adhere to the Protocol by not notifying parents regarding their child's gender nonconformity or transgender status unless the child had consented to his or her parents being notified.

36.     Because the Protocol continues to be implemented in all schools in Ludlow Public Schools, Plaintiffs Feliciano's and Salmeron's children are included in and subject to the Protocol.

37.     Therefore, information regarding the Feliciano and Salmeron children's gender nonconformity or transgender status would be, or presently is being, concealed from them if the children have raised, or do raise, those issues with District staff.

38.     Plaintiffs are informed and believe and based thereon allege that Defendant Monette as Principal of Baird Middle School has implemented the Protocol at Baird Middle School and directed administrators, teachers, counselors, including Defendant Marie-Claire Foley, librarians including until May 2021 Defendant Jordan Funke, and other staff to adhere to the Policy by not notifying parents regarding their child's gender nonconformity or transgender identification unless the child consented to his or her parents being notified.

39.     On or about September 2019, Defendant Jordan Funke instructed incoming sixth grade students at Baird Middle School to create videos and to include in the videos their gender identity and preferred pronouns. Plaintiffs Foote's and Silvestri's 11-year-old daughter, B.F. was among the students given that assignment. The videos of their children were created without the parents' knowledge or consent

and it remains unknown how these videos were used or who was allowed to view them.

40.     Plaintiffs are informed and believe and based thereon allege that Defendant Funke had previously given the assignment to incoming sixth graders, including Plaintiffs Foote's and Silvestri's son G.F., but since parents were not notified about the assignment, there was no way for Plaintiffs or other parents to know.

41.     Plaintiffs Foote and Silvestri learned of the video assignment and of their daughter's and son's participation in it only after other parents had learned after the fact that their children had participated.

42.     Plaintiffs Foote and Silvestri notified administrators at Baird Middle School and stated that they objected to Defendant Funke's actions. They were told that the assignment would not be repeated without parental notice and consent.

43.     On or about December 14, 2020, B.F. an 11-year-old sixth grade student at Baird Middle School, asked to meet with her teacher Bonnie Manchester virtually after school to discuss some issues.

44.     On December 15, 2020, B.F. met virtually with Ms. Manchester and told her that she was experiencing insecurity, low self-esteem, poor self-image, and a perceived lack of popularity. B.F. said that she had told a friend that she likes girls

and that she had been watching YouTube videos which presented the message that she was "born that way."

45.     B.F. told Ms. Manchester that she was depressed and needed help but was not sure how to ask her parents about getting help. Ms. Manchester offered to call B.F.'s parents and B.F. agreed. B.F. told Ms. Manchester that she was relieved and grateful that Ms. Manchester was calling her parents because B.F. was unsure how to broach the subject.

46.     On December 16, 2020 during a planning meeting, Ms. Manchester and other teachers said that they had observed that B.F. seemed to be depressed and that B.F.'s parents should be contacted. Ms. Manchester agreed to contact them since she had already discussed doing so with B.F.

47.     On December 17, 2020, Ms. Manchester contacted Mrs. Silvestri and informed her of the conversation with B.F. and concerns about B.F. feeling depressed. Ms. Manchester also told Mrs. Silverstri that B.F. had said that she might be attracted to the same sex and was having issues with self-image. Mrs. Silverstri responded that she had recently observed that there was something troubling B.F. and was grateful that Ms. Manchester had contacted her.

48.     During the December 17, 2020 conversation, Ms. Manchester and Mrs. Silvestri agreed to work together to help B.F. Mrs. Silvestri and Mr. Foote would

schedule therapy for B.F. and Ms. Manchester would work with B.F. on craft activities after school.

49.     Mrs. Silvestri and Mr. Foote retained a therapist to work with B.F. soon after the call with Ms. Manchester.

50.     On December 21, 2020, Mrs. Silvestri sent the following email to B.F.'s teachers, Defendant Monette, Defendant Gazda, and the members of Defendant School Committee:

> It has been brought to the attention of both Stephen and myself that some of B's teachers are concerned with her mental health. I appreciate your concern and would like to let you know that her father and I will be getting her the professional help she needs at this time. With that being said, we request that you do not have any private conversations with B. in regards to this matter. Please allow us to address this as a family and with the proper professionals.

51.     Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that Defendants Gazda and Monette and Baird Middle School teachers who had received the email disregarded the parents' instructions and Defendants Gazda and Monette failed to direct that Baird Middle School staff should comply with Plaintiffs' instructions regarding their 11-year-old daughter's mental health care.

52.     Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that prior to June 2021 Defendant Gazda and since June 2021 Defendant Nemeth along with Defendant Monette and Baird Middle School teachers

who had received the email have and are continuing to disregard the parents' instructions, as B.F. has changed her preferred name at least twice since December 2020 without Plaintiffs' knowledge or consent, and to this date they continue to address B.F. by whatever iteration of her name she has indicated she prefers. Teachers at Baird Middle School have revealed that they are disregarding the parents' instructions by sending email communications related to school assignments for B.F., but referencing a child with a first name other than "B."

53.     In reckless disregard of Plaintiffs Foote's and Silvestri's parental rights to make mental health decisions for their children and in direct contravention to their explicit instructions, Baird Middle School staff, and in particular Defendant Foley, have engaged in regular communications with B.F. in which B.F. talked about having a discordant gender identity and requested to be called by a male name, "R," and affirming the discordant identity and name.

54.     Said Baird Middle School staff did not notify Plaintiffs Foote and Silvestri of these conversations, but instead followed the Protocol to conceal this information from B.F.'s parents.

55.     Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that Defendants Gazda and Monette and Ludlow Public Schools, including Baird Middle School, teachers and counselors similarly disregarded the parents' intent regarding their son G.F. by engaging in regular conversations with

14

G.F., who had identified as transgender and requested to be called by a female name "S.," in which they affirmed the discordant identity and alternate name. Said Baird Middle School staff did not notify Plaintiffs Foote and Silvestri of these conversations, but instead followed the Protocol to conceal the information from them as they have for B.F.

56.     On February 28, 2021, B.F. sent the following email to Defendant Foley, Defendant Gazda, and teachers at Baird Middle School, including Ms. Manchester:

> Hello everyone, If you are reading this you are either my teacher or guidance counselor. I have an announcement to make and I trust you guys with this information. I am genderqueer. Basically, it means I use any pronouns (other than it/its). This also means I have a name change. My new name will be R****.  Please call me by that name. If you deadname me or use any pronouns I am not comfortable with I will politely tell you. I am telling you this because I feel like I can trust you. A list of pronouns you can use are: she/her he/him they/them fae/faerae/aer ve/ver xe/xem ze/zir. I have added a link so you can look at how to say them. Please only use the ones I have listed and not the other ones. I do not like them. Thank you. R*** Foote.

57.     Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on March 1, 2021, Defendant Foley sent a "reply all" email to B.F. and the other recipients of B.F.'s February 28, 2021 email saying that B.F.'s parents were not to be notified. In particular, Defendant Foley wrote: "R**** [B****] is still in the process of telling his parents and is requesting that school staff refer to him as B**** and use she/her pronouns with her parents and in written

emails/letters home." In so doing, Defendant Foley was directing Baird Middle
School staff to deceive Plaintiffs Foote and Silvestri by actively concealing the fact
that school staff were affirming an alternative name and identity for their daughter.

58.    Plaintiffs Foote and Silvestri are informed and believe and based
thereon allege that on March 1, 2021 some teachers at Baird Middle School
immediately began to refer to B.F. as "R" and to change name tags to reflect that
name, without notifying B.F.'s parents.

59.    Plaintiffs Foote and Silvestri are informed and believe and based
thereon allege that on or about March 1, 2021, Defendant Foley referred B.F. to
Defendant Funke. Defendant Funke had publicly told members of the school
community that she was "nonbinary," directed students to use "nonbinary" pronouns
and other labels for each other, and regularly met with students one-on-one to discuss
gender identity issues, provide resources promoting exploration of alternate gender
identities, and otherwise encourage children to experiment with alternate gender
identities without notifying parents or obtaining parental consent.

60.    On or about March 1, 2021, Mr. Foote and Mrs. Silvestri were sent a
copy of B.F.'s email by Ms. Manchester.

61.    Plaintiffs Foote and Silvestri are informed and believe and based
thereon allege that on March 8, 2021, Defendant Foley sent an email to the entire

staff at Baird Middle School informing staff members of B.F.'s request to be called "R***" and that her parents were not to be told.

62. Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on and before March 4, 2021 G.F.'s teachers at Baird Middle School were complying with G.F.'s request to be called by a preferred alternate name without the knowledge or consent of Mr. Foote and Mrs. Silvestri.

63. Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on March 10, 2021 during a planning meeting, Ms. Manchester and other Baird Middle School teachers discussed B.F.'s email and discussed that they were calling B.F.'s brother G.F. by his preferred name "S."

64. Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that during the planning meeting on March 10, 2021 Defendant Foley told the teachers present that the law says that school staff do not have to tell parents about their children's requests to change their name or otherwise socially affirm a student's asserted transgender identity.

65. Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on March 11, 2021, Defendant Foley, without notification to or consent from Mr. Foote or Mrs. Silvestri, initiated a conversation with B.F. through an online chat inquiring about her well-being. Defendant Foley also informed B.F. that she could use any bathroom that she felt comfortable with, including the boys'

bathroom, girls' bathroom, or one of three gender neutral bathrooms at the school. Defendant Foley offered to show B.F. where the gender neutral bathrooms were located.

66.    Therefore, as of March 11, 2021, Mr. Foote's and Mrs. Silvestri's 11-year-old daughter was being told that she could use the boys' privacy facilities at school, where she would be exposed to middle school boys in various states of undress and vice-versa, without Mr. Foote and Mrs. Silvestri being informed or consenting to same.

67.    Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on March 11, 2021, Defendant Foley told B.F. in an online chat that B.F. was "brave and awesome" for telling her teachers and guidance counselor that she was "genderqueer" and wanted to be referred to by the name "R."

68.    On March 18, 2021, Plaintiffs Foote and Silvestri met virtually with Defendant Monette to discuss the Defendants' disregard of the Plaintiffs' parental rights and, in particular, of the Plaintiffs' specific instructions that school staff not engage with their children regarding mental health issues which Mr. Foote and Mrs. Silvestri had told school officials that they were dealing with as a family with the help of a mental health professional, in keeping with their fundamental parental rights to direct the mental health care of their children.

69.    Mr. Foote and Mrs. Silvestri attempted to discuss the issues related to their children with Defendant Monette and to convey that Defendants were acting improperly and illegally in disregarding their parental rights and failing to notify them regarding their children's assertion of discordant gender identities and names.

70.    Defendant Monette failed to discuss the issues with Mr. Foote and Mrs. Silvestri, but ended the meeting after 10 minutes and after intimating that the school knew better than the parents what was best for B.F. and G.F. with regard to the gender identity issue.

71.    Plaintiffs are informed and believe and based thereon allege that on the day after the meeting with Mr. Foote and Mrs. Silvestri, March 19, 2021, Defendant Monette notified Ms. Manchester that she was being placed on administrative leave effective immediately for "conduct unbecoming a teacher relating to your inappropriate contact with the parents of a student," *i.e.,* forwarding a student's email to the student's own parents.

72.    Plaintiffs are informed and believe and based thereon allege that on March 25, 2021, Defendant Monette and Ludlow Public Schools' legal compliance officer Rebecca Bouchard met with Ms. Manchester and questioned her about her conversations with Mr. Foote and Mrs. Silvestri regarding the email sent by B.F. regarding her discordant gender identity and request to be called by a male name.

73.     On March 21, 2021, Mrs. Silvestri sent a follow up email to Defendant Gazda informing him that Mr. Foote's and her concerns about the school's conduct were not about their attitudes about sex and gender nor any disappointment or "embarrassment" on their part regarding those issues. Instead, Mrs. Silvestri and Mr. Foote were concerned about the fact that their rights as parents were being disregarded by school officials. Mrs. Silvestri said that their children telling teachers and fellow students "that they want to be called by a different name (of the opposite sex) is something that will follow the children through school and not be forgotten by classmates." Mrs. Silvestri stated that such a decision with long-term effects is something that parents should be the primary source of help and guidance to navigate their children through. She further stated that the fact that Mrs. Silvestri and Mr. Foote were not permitted to be involved in that decision because of school officials' concealment was unacceptable.

74.     In the March 21, 2021 email, Mrs. Silvestri reminded Defendant Gazda that no one to whom their original December 20, 2020 email was addressed acknowledged receipt or responded. Instead, the parents were ignored by teachers, guidance counselors, Defendant Gazda and the School Committee, who utterly disregarded the parents' explicit instructions to not engage in conversations with their children related to their mental health and to permit the parents to exercise their primary authority to oversee their children's mental health care.

75.    On March 22, 2021, Defendant Gazda replied via email in which he acknowledged that neither he nor anyone from the school committee responded to the parents' December 20, 2020 email. He asserted that Defendant Foley "acted appropriately" in not notifying B.F.'s parents when B.F. sent the February 28, 2021 email to Baird Middle School teachers and Defendant Foley. Defendant Gazda stated that Defendant Foley was "properly implementing" the DESE Guidance's statement that "School personnel should speak with the student first before discussing a student's gender nonconformity or transgender status with the student's parent or guardian." He also stated Defendant Foley "properly implemented" the statement that "school personnel should discuss with the student how the school should refer to the student, *e.g.*, appropriate pronoun use, in written communication to the student's parent or guardian." Implicit in Defendant Gazda's statement was Defendants' understanding, as implemented through the Protocol, that the DESE Guidance statement about speaking to a student before speaking to parents means not speaking to the parents at all if the student (a minor child under age 14) objects.

76.    Defendant Gazda further quoted the Guidance's reference to 603 CMR §23.01 that

> Transgender and gender nonconforming students may decide to discuss and express their gender identity openly and may decide when, with whom, and how much to share private information. A student who is 14 years of age or older, or who has entered the ninth grade, may consent to disclosure of information from his or her student record. If a student is under 14 and is not yet in the ninth grade, the student's parent

21

(alone) has the authority to decide on disclosures and other student record matters.

Defendant Gazda did not state that Ludlow Public Schools had adopted a policy which amended the age of consent to less than 14 years, and Plaintiffs are informed and believe that no such policy has been enacted. However, Mr. Gazda claimed that, even though B.F. was below age 14, Defendants did not violate 603 CMR §23.01 because no "disclosure" was made. Defendant Gazda also did not state how 603 CMR §23.01 would appropriately operate against the minor student's own parents.

77.   On March 26, 2021, Mr. Foote and Mrs. Silvestri met virtually with Defendant Gazda and Ms. Bouchard to further discuss the Defendants' disregard of their parental rights. Defendant Gazda and Ms. Bouchard repeated many of the same statements made by Defendant Monette during the March 18, 2021 meeting. Ms. Bouchard reiterated the claim that the District's Protocol of concealing from parents when their children of any age raise issues related to a discordant gender identity is in line with the DESE Guidance.

78.   At the March 26, 2021 meeting, Mr. Foote and Mrs. Silvestri again demanded that school staff not talk to their children about discordant gender identities and that school staff use the children's proper names. Defendant Gazda and Ms. Bouchard would not respond.

79.   Meanwhile, Defendant Foley and other staff members at Baird Middle School continued to knowingly and recklessly disregard Mr. Foote's and Mrs.

Silvestri's explicit instructions not to engage with their children regarding alternative genders, preferred names, and mental health issues by surreptitiously setting up regular meetings to discuss B.F.'s assertion of a discordant gender identity without the knowledge of her parents.

80.     On March 25, 2021, after Mr. Foote and Mrs. Silverstri had met with Defendant Monette and repeated their request that Baird Middle School staff cease talking with their children regarding gender issues, Defendant Foley encouraged B.F. to meet with Defendant Foley via a weekly online meeting to discuss her gender issues and mental health.

81.     On March 30, 2021, Defendant Foley told B.F. that she was worried about B.F. based upon a conversation Defendant Foley had with B.F. the day before. Defendant Foley said that she wanted B.F. to speak to another counselor. She said, "I can't be the only person that you talk to because we don't have enough time together and I can't be there to keep you safe," thereby planting or nurturing in B.F. the thought that her parents were not "safe."

82.     Despite claiming to be concerned about B.F.'s safety, Defendant Foley did not contact B.F.'s parents to share her concerns about their child's safety.

83.     When B.F. informed Defendant Foley that she was seeing a counselor that her parents had chosen, Defendant Foley questioned whether B.F. was comfortable discussing issues with that counselor as she was discussing issues with

Defendant Foley, thereby intimating that B.F.'s parents' choice might not be appropriate. Defendant Foley further stated that she believed that B.F. needed to get help and support, intimating that B.F. was not receiving appropriate help and support from her parents. In so doing, Defendant Foley was interfering with Plaintiffs' exercise of their right to direct B.F.'s mental health care as well as the parent-child relationship.

84.    Defendant Foley continued to interfere with Plaintiffs' exercise of their right to direct mental health care for B.F. and to question whether B.F.'s parents were providing B.F. with appropriate care in online chats in which she asked B.F. whether the counselor chosen by her parents was providing adequate care, and in stating that she was "behind" B.F., implying that B.F. needed further or different care  than was being offered by her parents.

85.    On April 7, 2021, Defendant Foley again interfered with Plaintiffs' exercise of their mental health decision-making in questioning whether B.F.'s parents were properly caring for B.F. in an online chat in which Defendant Foley asked B.F. whether B.F. could keep herself safe when she was feeling down. Defendant Foley further implied that B.F.'s parents were not providing appropriate care by telling B.F. that she was "there" for B.F., insinuating that B.F.'s parents were not able to keep her safe or provide proper care.

86.    Throughout April and May 2021, Defendant Foley continued to surreptitiously correspond with B.F. via online chats and text messages and continued to affirm and applaud B.F.'s assertion of alternate genders and alternate names, intentionally disregarding B.F.'s parents' rights to direct their daughter's mental health care and their explicit instructions that Baird Middle School staff was not to engage in such conversations with their children.

87.    On April 23, 2021, Mr. Foote received a card in the mail addressed to "R Foote," congratulating "R. Foote," Mr. Foote's daughter B.F., for winning a bumper sticker contest put on by one of her teachers. The teacher enclosed an Amazon Gift Card with "Congratulations R" written on it, demonstrating Defendants' continuing adherence to the Protocol and blatant disregard for Plaintiffs' parental rights.

88.    Defendants' continued implementation of the Protocol and disregard for parental rights is further evidenced by Defendant Monette's actions in terminating the employment of Ms. Manchester because Ms. Manchester respected the rights of B.F.'s parents by forwarding them information regarding their 11-year-old daughter's depression and low self-esteem, assertion of a discordant gender identity, and request to be referred to by a male name.

89.    Plaintiffs are informed and believe and based thereon allege that on April 16, 2021 Defendant Monette informed Ms. Manchester that she was

terminating Ms. Manchester's employment because forwarding an 11-year-old child's email regarding assertion of a discordant gender identity and request to use a male name, according to Ms. Monette, violated state and federal privacy laws, DESE guidelines, and contradicted the wishes of Plaintiffs Foote's and Silvestri's 11-year-old daughter. Defendant Monette did not explain how forwarding an 11-year-old child's email to her parents violated guidelines that said that parents have sole authority over disclosure of children's personal information until the child reaches age 14 or ninth grade.

90.     Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that Defendant Funke met one on one with G.F., as well as with B.F., on multiple occasions to discuss alternative genders, affirm the children's choices of alternative names, and provide encouragement for their assertion of a transgender identity, all without informing their parents or obtaining parental consent.

91.     Plaintiffs are informed and believe and based thereon allege that Defendant Funke instructed children not to use the terms "boys" and "girls," but to use alternative terms rooted in gender identity ideology, which were posted on the walls of the library and circulated to students as a handout. Parents were not informed of Defendant Funke's efforts to compel students to speak falsely [in accordance with the ideology being promoted by Defendant Funke] and to conceal information from their parents.

92.     Defendants' conduct in encouraging young students to conceal information from their parents and undermining parental authority explicitly and implicitly by planting seeds of doubt in the children's minds violates Plaintiffs' fundamental parental rights to direct the upbringing of their children, make mental health decisions for their children and protect family integrity and privacy. As to Plaintiffs Feliciano and Salmeron, Defendants' conduct also infringes on their sincerely held religious beliefs which include respect for parental authority, truthfulness, and adherence to a Biblical understanding of male and female and standards of behavior.

93.     Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that at least between December 2020 and May 2021, and perhaps continuing through the present (since the Protocol requires secrecy), Ludlow Public School staff applied and perhaps is still applying the Protocol in interactions with G.F., as well as continuing to apply the Protocol to interactions with B.F.  Ludlow Public Schools staff continued to endorse an alternative female identity for G.F. with a new female name and pronouns when G.F. was at school, or in personal correspondence with G.F., and concealed this significant information from Mr. Foote and Mrs. Silvestri despite the parents' explicit direction that school staff were not to engage in conversations with their children regarding gender issues.

94.     In so doing, Defendants and other staff in Ludlow Public Schools acting under the authority and direction of Defendants Gazda, Nemeth, Monette, and the School Committee have intentionally acted in reckless disregard of Mr. Foote's and Mrs. Silvestri's rights to direct the mental health care of their children and in direct contravention of their explicit instructions to Defendant Gazda, Defendant Monette, the School Committee, and other Ludlow Public Schools staff.

95.     Furthermore, Plaintiffs Feliciano's and Salmeron's children may have already been subject to the protocol and remain at risk of being subjected to the Protocol so long as Defendants continue to implement it and recklessly disregard Plaintiffs' rights to direct the upbringing of their children and to direct the mental health care of their children. Because the intent of the Protocol is to conceal information from parents, Plaintiffs Feliciano and Salmeron are deliberately hindered from ascertaining whether their children are being secretly counseled about and affirmed in discordant gender identities without their knowledge or consent.

96.     Defendants School Committee, Nemeth, and Monette are continuing to implement the Protocol to conceal information from parents when children of any age raise issues related to gender non-conformity or transgender status in direct contravention of Plaintiffs' parental rights as set forth more fully *infra*. Defendants' zeal to implement the Protocol and conceal information from parents was manifested in terminating the employment of a teacher who dared to inform the parents of an

11-year-old child that their child was experiencing depression, asserting a discordant gender identity, and requesting to use an assumed male name.

97.    Defendant School Committee has explicitly approved the institution and continuing implementation of the Protocol and the intentional concealment of information from parents.

98.    On May 25, 2021 during a School Committee public meeting, a tenth grade student in Ludlow Public Schools submitted a public comment via email, which was the only vehicle that the School Committee provided for the public meeting that was held in an empty meeting room. In that comment, the writer confirmed what Plaintiffs had been experiencing, *i.e.*, Defendants' disregard for parental rights.

99.    In the email read aloud during the meeting, the writer said that staff members were pushing extreme ideas to children 11 to 14 years old as part of an agenda aimed at "trying to convince children to change who they are and change their sexuality and gender at an age that many of them do not yet fully understand the concepts of sexuality and gender." The writer further stated that the School Committee and staff were ignoring parents' rights.

100.   After the email was read, Defendant Gazda read a prepared rebuttal. Defendant Gazda did not dispute what was said about District actions. Instead, Defendant Gazda stated that the District's actions were about "inclusion" and

making schools "safe" for children. He said the District's actions "help children" to "be free to be themselves." Defendant Gazda said that instead of discontinuing their actions the District needed to do more to protect LGBTQ children.

101.   Defendant Gazda also stated publicly what he had told Plaintiffs privately, *i.e.,* that the District's actions (*e.g.,* the Protocol) are "in compliance" with the laws and regulations of Massachusetts and DESE Guidance.

102.   Defendant Gazda further stated publicly, without refutation from the School Committee, that parents' concerns amounted to "intolerance of LGBTQ people thinly veiled" behind a "camouflage of parental rights." Defendant Gazda further stated that schools, not homes, are the true "safe space" for children because schools supply "caring adults" where students can discuss problems and find support for their "true identities," implying that children do not receive such care from their parents. He said, "For many students school is their only safe place, and that safety evaporates when they leave the confines of our buildings," insinuating that safety is not to be found in their homes. Gazda said that the middle school will absolutely continue to help the children "express who they are" despite parents' wishes to the contrary.

103.   Defendant School Committee has condoned and facilitated the continued implementation of the Protocol, and in particular the intentional and blatant disregard for parental rights reflected in concealing information from parents

regarding their children's gender non-conformity or transgender identification and in actively deceiving parents by directing staff to use children's given names and pronouns when speaking with parents but using the child's asserted preference for alternative names and pronouns at all other times.

104. Defendant School Committee has evidenced that it has adopted the Protocol as a *de facto* policy in public statements, including those at the June 8, 2021 public meeting. After an email public comment from a group of parents was read during the meeting, Committee Chairman Michael Kelliher repeated Defendant Gazda's claim that the District's actions were "in compliance" with state and federal laws. Mr. Kelliher defended the actions of district staff as "simply doing their jobs" of "being welcoming and supporting to the children." Expressing disdain and disregard for the rights of Ludlow Public School parents, he said that parents who were making their concerns known to the Committee were opposing "inclusive policies of the Ludlow Public Schools" and were "under the spell" of "outside groups."

105. At the June 8, 2021 Committee meeting Defendant Gazda further evidenced Defendants' disdain and disregard for parental rights by characterizing parents' concerns about not being notified and their decisions not being honored regarding their children's gender identity issues as "prejudice and bigotry."

106.   Committee members did not disagree with nor correct Defendant Gazda's public statements or otherwise refute that the District's accepted Protocol, *i.e. de facto* policy, was to conceal critical information regarding their children's mental health from parents and to disregard parents' instructions regarding their children's assertion of a discordant gender identity.

107.   As parents of children who attend Ludlow Public Schools, all of the Plaintiffs are subjects of Defendants' Protocol, disdain, and attendant reckless disregard for their fundamental rights. So long as the Protocol remains in effect and is being implemented by Defendants, Plaintiffs continue to suffer deprivation of their fundamental parental rights to direct the upbringing of their children and particularly to direct the mental health care of their children.

108.   So long as the Protocol remains in place, Plaintiffs' children can be, or may already be, subject to surreptitious meetings, conversations, counseling sessions, online chats, and other communications with Ludlow Public Schools staff regarding gender non-conformity and transgender issues without the knowledge or consent of their parents. Furthermore, Plaintiffs' parental rights continue to be threatened by the Protocol's instructions that parents are to be deliberately deceived by staff who are directed to use their child's legal name and pronouns corresponding to their sex when speaking with parents, but children's preferred alternative names and pronouns at all other times in school-related communications.

109.   The continuing existence and implementation of the Protocol also infringes on Plaintiffs Feliciano's and Salmeron's rights to free exercise of religion in that their sincerely held religious beliefs require truthfulness in speech, obedience to parents, and that their children's identities as being created male or female be respected regardless of contrary personal beliefs of school staff members.

110.   Defendants' Protocol that affirms children's desires to be called by an alternate gender discordant name and pronouns and actively promotes the idea that they can socially transition to another gender involves significant mental health decisions affecting children's well-being with potentially life-long consequences. Under the Protocol, these decisions are being made without the knowledge or consent of parents.

111.   Defendants have acted with reckless disregard for the rights of Plaintiffs Foote and Silvestri as the parents of B.F. and G.F. and substituted their judgment for that of the parents in providing unauthorized mental health counseling and intervention without the knowledge or consent of B.F.'s and G.F.'s fit parents. Defendants have intentionally and purposefully driven a wedge between Plaintiffs and their children, fostered distrust of parents, planted seeds of doubt that the parents can appropriately care for their children and keep them safe, and otherwise irreparably harmed the parent-child relationship.

112. Defendants have acted with reckless disregard for the rights of Plaintiffs Feliciano and Salmeron and other parents of children in Ludlow Public Schools. In adopting and continuing to implement the Protocol, Defendants have substituted, and continue to substitute, their judgment for that of the parents in directing the upbringing and mental health care for the children of Ludlow Public Schools. Defendants' actions and public statements evidence a reckless disregard and disdain for the fundamental rights of Plaintiffs and other parents in Ludlow Public Schools regarding decision-making related to children's assertion of a gender identity in conflict with their sex and gender non-conformity. Defendants are intentionally and purposefully driving a wedge between Plaintiffs and their children, fostering distrust of parents, planting seeds of doubt about whether parents can appropriately care for their children and keep them safe, and are otherwise irreparably harming the parent-child relationship.

113. Defendants' reckless disregard for the rights of Plaintiffs and other parents of Ludlow Public School students has impermissibly supplanted the rights of the parents to make mental health decisions and direct the upbringing of their children, interfered with the privacy rights of the family, created uncertainty and distrust between parents and children and between parents and educators, and threatened free exercise rights.

114.    Unless and until Defendants, *inter alia*, a) publicly rescind the Protocol, b) cease communicating to Ludlow Public School staff that parents are not to be notified and punishing staff who notify parents, c) publicly establish a policy that parents will be notified when children raise issues related to their mental health and discordant gender identity, d) cease meeting with children to provide counsel, advice and advocacy related to mental health and discordant gender identity without parental notice and consent, and e) cease deceiving parents by using one set of names and pronouns when communicating with them and another at school,  Plaintiffs' fundamental rights to direct the upbringing of their children, to make decisions regarding their children's medical and mental health, and right of familial privacy will continue to be violated.

115.    Defendants' ongoing violations of Plaintiffs' fundamental parental rights have caused and will continue to cause irreparable harm unless and until discontinued.

**FIRST CAUSE OF ACTION**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983**
**(Violation of Plaintiffs' Substantive Due Process Fundamental Parental**
**Right to Direct the Education and Upbringing of Their Children under**
**the U.S. Constitution)**
**(By All Plaintiffs Against all Defendants)**

116.    Plaintiffs incorporate the preceding allegations by reference as if set forth in full.

117.   The Due Process Clause in the 14th Amendment to the United States Constitution protects the fundamental right of parents to direct the education, upbringing and the care, custody, and control of their children. *Pierce v. Society of Sisters*, 268 U.S. 510 (1925); *Troxel v. Granville*, 530 U.S. 57, 68 (2000).

118.   Defendants have violated and are violating Plaintiffs' fundamental right to make decisions regarding the upbringing, education, custody, care, and control of their children in establishing and implementing the Protocol that prohibits informing parents regarding their children's assertions regarding gender non-conformity, transgender status and attendant requests to affirm alternate identities unless their minor children of any age consent.

119.   Defendants have acted and are acting with reckless disregard for Plaintiffs' fundamental parental rights by purposefully and intentionally concealing critical information regarding the upbringing and care of their children, *i.e.,* that the children are asserting a discordant gender identity, that the children have requested to be addressed by an opposite sex name and pronouns and other information associated with affirming the child's assertions.

120.   Defendants have acted and are acting with reckless disregard for Plaintiffs' fundamental parental rights by continuing to implement the Protocol, *i.e.,* a *de facto* district policy of undermining parental authority based on an unsubstantiated assertion that state law and DESE Guidance provide that children of

any age have the authority to determine whether their parents will be informed when they raise issues of gender non-conformity or transgender status, request to be called by an alternative name or pronouns and even use privacy facilities designated for the opposite sex. In so doing, Defendants are explicitly and intentionally excluding Plaintiffs from significant decision-making directly related to their children's care.

121.   Defendants' reckless disregard for Plaintiffs' rights has resulted in and is resulting in deprivation of their fundamental constitutional rights.

122.   Plaintiffs' constitutionally protected right to direct the upbringing and education of their children was violated as the plainly obvious consequence of Defendants' actions in intentionally and explicitly withholding information in accordance with the Protocol, *i.e.*, a *de facto* school policy that parents were not to be notified when their children raise issues of gender non-conformity or transgender status, request to be called by an alternative name or pronouns and even use privacy facilities designated for the opposite sex.

123.   Plaintiffs' constitutionally protected right to direct the upbringing and education of their children was violated as the plainly obvious consequence of Defendants' actions in, *inter alia,* a) meeting secretly with their children to engage in counseling and advocacy related to mental health and discordant gender identity without parental notice and consent, b) deceiving parents by using one set of names and pronouns when communicating with them and another at school, c) directing

37

children to speak untruthfully by instructing them to use alternate gender pronouns and names for their peers, and d) nurturing distrust for parents through secret meetings in which parents' decisions and ability to provide for their children are questioned.

124.   Defendants cannot assert a compelling interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the upbringing, care, and education of their children, and Defendants' prohibition against parental notification is not narrowly tailored.

125.   Defendants' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

126.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their fundamental rights.

## SECOND CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983
**(Violation of Plaintiffs' Fundamental Parental Right to Direct the Medical and Mental Health Decision-making for Their Children Under the U.S. Constitution)**
**(By All Plaintiffs Against all Defendants)**

127.   Plaintiffs incorporate the allegations in paragraphs 1-115 by reference as if set forth in full.

128.   The Due Process Clause in the 14th Amendment to the United States Constitution protects the fundamental right of parents to direct the medical and

mental health decision-making for their children. *Parham v. J. R.*, 442 U.S. 584 (1979).

129.   The Commonwealth of Massachusetts has codified the concept of parents having the fundamental right to direct the medical and mental health decision-making for their children until age 18 in Mass. G.L. chapter 112, §12F. The Massachusetts Supreme Judicial Court has further memorialized that parents, as the "natural guardians of their children," have the right to consent to routine, non-emergency treatment of a minor child. See *Custody of a Minor*, 375 Mass. 733, 747 (1978).

130.   By withholding information regarding their children's assertion of a discordant   gender identity and request to socially transition their children by affirming that identity with the use of preferred opposite sex names and pronouns and adopting the Protocol, Defendants are making decisions that affect the mental health of their children in contravention of Plaintiffs' fundamental rights under the U.S. Constitution and Massachusetts law.

131.   Defendants have usurped Plaintiffs' responsibility for the health and well-being of their children and sought to supplant their authority for Plaintiffs' authority as fit parents to be the ultimate decisionmakers regarding the physical and mental health of their children, including decisions related to their children's confusion or distress about their sex or gender identity.

39

132.   Defendants have violated and are violating Plaintiffs' fundamental right to make decisions regarding the mental health of their children by adopting the Protocol providing that a) parents are not to be notified if their children express a discordant gender identity; b) parents are presumed to pose a danger to their child's health and well-being if notified of their child's gender confusion or discordant gender identity; c) parents are not to be included in meetings with their children to discuss changes to be made in response to the children's assertion of a discordant gender identity unless the child consents; d) parents are to be intentionally misled and lied to when school staff discuss their children, in that staff are to use the children's legal name and biologically accurate pronouns when talking to parents but not in other circumstances; e) children are to be permitted to decide which privacy facilities they will use without the involvement of their parents.

133.   Affirming a child's discordant gender identity involves significant mental health and medical decisions affecting the well-being of children with potentially life-long consequences. Therefore, by excluding parents from discussions regarding their children's assertion of a discordant gender identity and adopting the Protocol aimed at secretively affirming the discordant gender identity, Defendants are making, and have made decisions that affect the mental health of Plaintiffs' children in contravention of Plaintiffs' fundamental rights as enumerated in the U.S. Constitution and Massachusetts law.

134.   Defendants have acted and are acting with reckless disregard for Plaintiffs' fundamental parental rights by withholding information regarding their children's mental health based on an unsubstantiated assertion that state law, regulations and DESE Guidance grant children rights of confidentiality that prohibit disclosing information regarding gender identity to their own parents, thereby explicitly and intentionally excluding Plaintiffs from making the mental health decisions for their children that are exclusively their right to make.

135.   Defendants' reckless disregard for Plaintiffs' rights has resulted in and continues to result in deprivation of their fundamental constitutional rights.

136.   Plaintiffs' constitutionally and statutorily protected rights to make decisions regarding the mental health of their children was violated as the plainly obvious consequence of Defendants' actions in intentionally and explicitly withholding information in accordance with the Protocol, *i.e.*, a *de facto* school policy that parents were not to be notified when their children raise issues of gender non-conformity or transgender status, request to be called by an alternative name or pronouns and even use privacy facilities designated for the opposite sex.

137.   Plaintiffs' constitutionally and statutorily protected rights to make decisions regarding the mental health of their children was violated as the plainly obvious consequence of Defendants' actions in, *inter alia,* a) meeting secretly with their children to engage in counseling  and advocacy related to mental health and

discordant gender identity without parental notice and consent, b) deceiving parents by using one set of names and pronouns when communicating with them and another at school, c) directing children to speak untruthfully by instructing them to use alternate gender pronouns and names for their peers, and d) nurturing distrust for parents through secret meetings in which parents' decisions and ability to provide for their children are questioned.

138.  Defendants cannot assert a compelling interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the medical and mental health care for their child, and Defendants' prohibition against parental notification is not narrowly tailored.

139.  Defendants' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

140.  Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their fundamental rights.

### THIRD CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983
### (Violation of Plaintiffs' Right to Familial Privacy Under the U.S. Constitution)
### (By All Plaintiffs Against all Defendants)

141.  Plaintiffs incorporate the allegations in paragraphs 1-115 by reference as if set forth in full.

142.  The Due Process Clause in the 14th Amendment to the United States Constitution protects the sanctity of the family as an institution deeply rooted in this

Nation's history and tradition through which moral and cultural values are passed down. *Moore v. East Cleveland*, 431 U.S. 494, 503-04 (1977). The Constitution protects the private realm of the family from interference by the state. *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944).

143.   In substituting their judgment regarding the mental health of B.F., G.F., and other Ludlow Public Schools students for the judgment of their parents by implementing the Protocol to withhold information regarding children's assertion of a discordant gender identity and request to affirm that identity without notifying the parents, Defendants have impermissibly inserted themselves into the private realm of Plaintiffs' families by usurping Plaintiffs' rights to make decisions regarding their children's upbringing, mental health, and well-being.

144.   In substituting their judgment for the judgment of parents by refusing to inform parents when their children disclose a discordant gender identity and seek affirmation of the identity at school without notifying the parents, Defendants have impermissibly inserted themselves into the private realm of Plaintiffs' families by depriving B.F., G.F., and other minor Ludlow Public Schools students of their right to have decisions regarding their upbringing, mental health and well-being made by their parents.

145.   Defendants have infringed Plaintiffs' right to family privacy by implicitly informing children that their parents cannot be trusted to be informed of

or involved in decision-making related to their children's assertion of a discordant gender identity. Defendants have explicitly evidenced their hostility and intent to infringe upon family privacy through public statements that Defendants' schools are the only safe space for many children and that parental concerns about children's assertions of discordant gender identities are rooted in bigotry.

146.   Through their implementation of the Protocol, punishment of teachers who do not comply with it, and public statements denigrating parents who disagree with the Protocol, Defendants are nurturing significant seeds of doubt within children's minds about whether their parents are acting in their best interests. In so doing, Defendants are sowing discord and division in the parent-child relationships and violating Plaintiffs' rights to family privacy.

147.   Defendants have acted and are acting with reckless disregard for Plaintiffs' rights to family privacy by their actions in intentionally casting doubt on parents' support and ability to respond appropriately to their children's expression of discordant gender identities and excluding parents from decision-making related to their children's questions regarding their sex and gender identity.

148.   Defendants' deliberate indifference to Plaintiffs' rights has resulted in and continues to result in deprivation of their constitutional rights to family privacy.

149.   Plaintiffs' constitutionally protected rights to familial privacy were violated as the plainly obvious consequence of Defendants' actions in intentionally

and explicitly withholding information in accordance with the Protocol, *i.e.*, a *de facto* school policy that parents were not to be notified when their children raise issues of gender non-conformity or transgender status, request to be called by an alternative name or pronouns and even use privacy facilities designated for the opposite sex.

150.  Plaintiffs' constitutionally protected right to family privacy was violated as the plainly obvious consequence of Defendants' actions in, *inter alia,* a) meeting secretly with their children to engage in counseling and advocacy related to mental health and discordant gender identity without parental notice and consent, b) deceiving parents by using one set of names and pronouns when communicating with them and another at school, c) directing children to speak untruthfully by instructing them to use alternate gender pronouns and names for their peers, and d) nurturing distrust for parents through secret meetings in which parents' decisions and ability to provide for their children are questioned.

151.  Defendants cannot assert a compelling state interest for recklessly disregarding Plaintiffs' constitutional rights to familial privacy, and Defendants' prohibitions against parental notification and involvement in children's mental health decisions related to gender identity are not narrowly tailored.

152.  Defendants' violation of Plaintiffs' constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm in that Plaintiffs

have been and are being denied their right to direct decisions concerning the upbringing and mental health care for their children without interference from the state, and their children are denied the right to have upbringing and mental health decisions made by their parents in keeping with their family values and sincerely held religious beliefs.

153.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their fundamental rights.

### FOURTH CAUSE OF ACTION
### Violation of Civil Rights, 42 U.S.C. § 1983
### (Violation of Plaintiffs' Right to Free Exercise of Religion Under the U.S. Constitution)
### (By Plaintiffs Feliciano and Salmeron Against all Defendants)

154.   Plaintiffs incorporate the allegations in paragraphs 1-115 by reference as if set forth in full.

155.   The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiffs' right to free exercise of religion.

156.   Plaintiffs have sincerely held religious beliefs that human beings are created male or female and that the natural created order regarding human sexuality cannot be changed regardless of individual feelings, beliefs, or discomfort with one's identity, and biological reality, as either male or female.

157.   Plaintiffs have sincerely held religious beliefs that parents have the non-delegable duty to direct the upbringing and beliefs, religious training, and medical and mental health care of their children and any intrusion of the government into that realm infringes upon the free exercise of their religion.

158.   Plaintiffs have sincerely held religious beliefs that all people are to be treated with respect and compassion, and that respect and compassion do not include misrepresenting an individual's natural created identity as either a male or a female.

159.   Plaintiffs have sincerely held religious beliefs that individuals are to speak the truth, including speaking the truth regarding matters of sexual identity as a male or female.

160.   Defendants' actions in excluding Plaintiffs Feliciano and Salmeron from decision making regarding their children's sexual and gender identity target the Plaintiffs' beliefs regarding the created order, human nature, sexuality, gender, ethics, and morality which constitute central components of their sincerely held religious beliefs.

161.   Defendants' actions have caused a direct and immediate conflict with Plaintiffs' religious beliefs by prohibiting them from being informed of mental health issues their children are or might be undergoing and denying them the opportunity to seek counseling and guidance for their children in a manner that is consistent with the beliefs sincerely held by their family instead of the government.

162.   Defendants' actions are coercive in that they deliberately supplant Plaintiffs' role as advisors of the moral and religious development of their children so that they are not able to direct their children's mental health care and counseling regarding sex and gender identity in accordance with their values because Defendants have substituted the state's perspective on the issues of sex and gender identity for the perspective of Plaintiffs in violation of Plaintiffs' free exercise rights.

163.   Defendants' actions are neither neutral nor generally applicable, but rather, specifically and discriminatorily target the religious speech, beliefs, and viewpoint of Plaintiffs and thus expressly constitute a substantial burden on sincerely held religious beliefs that are contrary to Defendants' viewpoint regarding gender identity and affirmation of a discordant gender identity.

164.   No compelling state interest justifies the burdens Defendants have imposed and are imposing on Plaintiffs' rights to the free exercise of religion.

165.   Defendants' actions are not the least restrictive means to accomplish any permissible government purpose Defendants seek to serve.

166.   Defendants' violation of Plaintiffs' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs to suffer undue and actual hardships.

167.   Defendants' violation of Plaintiffs' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs to suffer irreparable

injury. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

## FIFTH CAUSE OF ACTION

### Violation of Plaintiffs' Right to Free Exercise of Religion Under the Massachusetts Constitution

### (By Plaintiffs Feliciano and Salmeron Against all Defendants)

168.  Plaintiffs incorporate the allegations in paragraphs 1-115 by reference as if set forth in full.

169.  Art. 2 of the Declaration of Rights of the Massachusetts Constitution prohibits Defendants from abridging Plaintiffs' right to free exercise of religion.

170.  Plaintiffs have sincerely held religious beliefs that human beings are created male or female and that the natural created order regarding human sexuality cannot be changed regardless of individual feelings, beliefs, or discomfort with one's identity, and biological reality, as either male or female.

171.  Plaintiffs have sincerely held religious beliefs that parents have the exclusive and non-delegable duty to direct the upbringing and beliefs, religious training, and medical and mental health care of their children and any intrusion of the government into that realm infringes upon the free exercise of their religion.

172.  Plaintiffs have sincerely held religious beliefs that all people are to be treated with respect and compassion, and that respect and compassion do not include misrepresenting an individual's natural created identity as either a male or a female.

173.   Plaintiffs have sincerely held religious beliefs that individuals are to speak the truth, including speaking the truth regarding matters of sexual identity as a male or female.

174.   Defendants' actions in excluding Plaintiffs Feliciano and Salmeron from decision making regarding their children's sexual and gender identity target the Plaintiffs' beliefs regarding the created order, human nature, sexuality, gender, ethics, and morality which constitute central components of their sincerely held religious beliefs.

175.   Defendants' actions have caused a direct and immediate conflict with Plaintiffs' religious beliefs by prohibiting them from being informed of mental health issues their children are or might be undergoing and seeking counseling and guidance for their children in a manner that is consistent with the beliefs held by their family instead of the government.

176.   Defendants' actions are coercive in that they deliberately usurp and supplant Plaintiffs' role as advisors of the moral and religious development of their children so that they are not able to instruct their children regarding sex and gender identity in accordance with their values because Defendants have substituted the state's perspective on the issues of sex and gender identity for the perspective of Plaintiffs in violation of Plaintiffs' free exercise rights.

177. Defendants' actions are neither neutral nor generally applicable, but rather specifically and discriminatorily target the religious speech, beliefs, and viewpoint of Plaintiffs and thus expressly constitute a substantial burden on sincerely held religious beliefs that are contrary to Defendants' viewpoint regarding gender identity and affirmation of a discordant gender identity.

178. No compelling state interest justifies the burdens Defendants have imposed and are imposing on Plaintiffs' rights to the free exercise of religion.

179. Defendants' actions are not the least restrictive means to accomplish any permissible government purpose Defendants seek to serve.

180. Defendants' violation of Plaintiffs' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs to suffer undue and actual hardships.

181. Defendants' violation of Plaintiffs' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs to suffer irreparable injury. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

1. A declaration that Defendants have violated Plaintiffs' fundamental rights as parents, under the United States and Massachusetts constitutions and other laws

to the extent that they: a) have implemented a Protocol, *i.e., de facto* policy to conceal from parents when their children express a discordant gender identity and are being affirmed in that identity through the use of, *inter alia,* alternate preferred opposite sex names and pronouns; b) actively implement and reinforce the Protocol through surreptitious meetings with minor children to discuss gender identity and promote experimenting with alternative gender identities; c) actively and intentionally nurture in children distrust of their parents by questioning the parents' support and care for their children when they express a discordant gender identity; d) actively and intentionally direct school staff to deceive parents by using given names and pronouns in communications with parents but otherwise affirming a minor child's preferences.

2.  A declaration that teachers and staff: a) may not facilitate a child's social transition to a different gender identity at school without parental notification and consent; b) must communicate with parents if they have reason to believe their child may be dealing with gender confusion or dysphoria, without first obtaining the child's consent; and c) may not attempt to deceive parents by, *inter alia,* using different names and pronouns around parents than are used in school;

3.  A declaration that the Protocol and any associated policies and procedures are to be publicly rescinded and parents notified that the Protocol and associated policies and procedures have been rescinded.

4. Preliminary and permanent injunctions prohibiting Defendants, their employees, agents and third parties acting at their direction from: a) Using, referencing, relying on, or otherwise acknowledging the Protocol and associated policies and procedures as guidance for Ludlow Public Schools' staff and administrators; b) Training staff to exclude parents from discussions, meetings, and other interventions with the parents' children related to the children's assertion of a discordant gender identity; c) Failing to notify parents when their children express the belief that they have a discordant gender identity and want to take actions to affirm that identify; d) Failing or refusing to abide by parents' instructions concerning their children's discordant gender identity; e) Meeting with children to discuss or engaging in counseling or advocacy regarding the children's gender confusion or discordant gender identity without notice to and the consent of their parents.

5. Preliminary and permanent injunctions prohibiting Defendants, their employees, agents and third parties acting at their direction from instructing, directing, or encouraging Ludlow Public Schools staff to participate in programs, initiatives, activities, or discussions in which Ludlow Public Schools staff promise children that their parents will not be told about children's disclosures related to a belief that they have a discordant gender identity.

6. For nominal damages;

7.  For compensatory damages according to proof for the injuries caused by Defendants' acts and omissions, as proven at trial;

8.  For attorneys' fees and costs under 42 U.S.C. § 1988;

9.  For such other relief as the Court deems proper.

Dated: April 12, 2022.

/s/ Andrew Beckwith
MA Bar No. 657747
Massachusetts Family Institute
401 Edgewater Place, Suite 580
Wakefield, MA 01880
781.569.0400
andrew@mafamily.org

Vernadette R. Broyles (GA Bar No. 593026)*
Mary E. McAlister (VA Bar No. 76057)*
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
5805 State Bridge Rd., Suite G310
Johns Creek, GA 30097
770.448.4525
vbroyles@childparentrights.org
mmcalister@childparentrights.org
* pro hac vice admissions pending
Attorneys for Plaintiffs

## VERIFICATION

I, Stephen Foote, am over the age of 18 and am a Plaintiff in this action. I testify under penalty of perjury under 28 U.S.C. §1746 that I have read the foregoing Complaint and the factual allegations contained in it and to the best of my knowledge the facts contained therein are true and correct.

Executed on ~~March~~ April 7, 2022 at Ludlow, Massachusetts.

_____

Stephen Foote

55

**VERIFICATION**

I, Marissa Silvestri, am over the age of 18 and am a Plaintiff in this action. I testify under penalty of perjury under 28 U.S.C. §1746 that I have read the foregoing Complaint and the factual allegations contained in it and to the best of my knowledge the facts contained therein are true and correct.

Executed on ~~March~~ April 7, 2022 at Windsor, Connecticut.

Marissa Silvestri

## VERIFICATION

I, Jonathan Feliciano, am over the age of 18 and am a Plaintiff in this action. I testify under penalty of perjury under 28 U.S.C. §1746 that I have read the foregoing Complaint and the factual allegations contained in it and to the best of my knowledge the facts contained therein are true and correct.

Executed on March 31, 2022 at Ludlow, Massachusetts.

Jonathan Feliciano

## VERIFICATION

I, Sandra Salmeron, am over the age of 18 and am a Plaintiff in this action. I testify under penalty of perjury under 28 U.S.C. §1746 that I have read the foregoing Complaint and the factual allegations contained in it and to the best of my knowledge the facts contained therein are true and correct.

Executed on March 31, 2022 at Ludlow, Massachusetts.

Sandra Salmeron