IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

SPRINGFIELD DIVISION


| | |
|---|---|
| STEPHEN FOOTE, individually, and as ) <br> Guardian and next friend of B.F. and G.F. ) <br> minors, MARISSA SILVESTRI, ) <br> individually and as Guardian and ) <br> next friend of B.F. and G.F., minors, ) <br> JONATHAN FELICIANO, ) <br> SANDRA SALMERON, ) <br> ) <br>                Plaintiffs, ) <br> ) <br> ) <br> v. ) <br> ) <br> TOWN OF LUDLOW, LUDLOW ) <br> SCHOOL COMMITTEE, LISA NEMETH, ) <br> individually and in her official capacity ) <br> as Interim Superintendent of Ludlow Public ) <br> Schools, TODD GAZDA, individually, ) <br> and in his official capacity as former ) <br> Superintendent of  Ludlow Public Schools, ) <br> STACY MONETTE, individually and in ) <br> her official capacity as Principal of Baird ) <br> Middle School, MARIE-CLAIRE FOLEY, ) <br> individually and in her official capacity ) <br> as school counselor for Baird Middle School) <br> JORDAN FUNKE, individually and in her ) <br> official capacity as former librarian at Baird ) <br> Middle School, ) <br> ) <br>                Defendants. ) <br> _____) | Case No. 3:22-cv-30041-MGM <br><br> AMENDED COMPLAINT <br> FOR INJUNCTIVE RELIEF, <br> DECLARATORY <br> JUDGMENT, AND <br> DAMAGES <br><br> JURY TRIAL REQUESTED |

Plaintiffs, Stephen Foote, individually, and as Guardian and next friend of B.F. and G.F., minors, Marissa Silvestri, individually and as Guardian and next friend of B.F. and G.F., minors, Jonathan Feliciano, and Sandra Salmeron, by and through their attorneys of record, file their First Amended Complaint against Town of Ludlow, Ludlow School Committee, Lisa Nemeth, Todd Gazda, Stacy Monette, Marie-Claire Foley, and Jordan Funke, Defendants, and in support thereof, allege as follows:

## INTRODUCTION

1.    Defendants have exceeded the bounds of legitimate pedagogical concerns and usurped the role of Plaintiffs Stephen Foote and Marissa Silvestri, Jonathan Feliciano and Sandra Salmeron, to direct the upbringing of their children, make medical and mental health decisions for their children, and to promote and preserve family privacy and integrity.

2.    Defendants' protocol and practice of concealing from parents information related to their children's gender identity and efforts to affirm a discordant student gender identity at school violate parents' fundamental rights under the United States Constitution and violate children's reciprocal rights to the care and custody of their parents, familial privacy, and integrity. As to Plaintiffs Jonathan Feliciano and Sandra Salmeron, it also violates their fundamental right to free exercise of religion under the United States Constitution.

1

3.      Plaintiffs Stephen Foote and Marissa Silvestri are seeking injunctive and declaratory relief and damages under 42 U.S.C. §1983 on behalf of themselves and their minor children, B.F. and G.F., for violation of their constitutional rights. Plaintiffs Jonathan Feliciano and Sandra Salmeron are seeking injunctive and declaratory relief and damages under 42 U.S.C. §1983 for violation of their constitutional rights. Plaintiffs also seek costs and attorneys' fees pursuant to 42 U.S.C. §1988.

## JURISDICTION AND VENUE

4.      This action is filed pursuant to 42 U.S.C. § 1983 seeking redress of injuries suffered by Plaintiffs from deprivation, under color of state law, of rights secured by the First and Fourteenth Amendments to the United States Constitution, by the laws of the United States and the laws of the Commonwealth of Massachusetts. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a). Jurisdiction is also proper under 28 U.S.C. § 1332(a)(1) in that the amount in controversy exceeds $75,000 and is between citizens of different states.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and other applicable law because the events and omissions giving rise to the claims in this action arose in the Town of Ludlow, Massachusetts which is situated within the district and divisional boundaries of the Springfield Division of the U.S. District

Court for the District of Massachusetts. Venue is also proper in this Court because Defendants reside or have their principal place of business in this District.

6.    This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, implemented through Federal Rule of Civil Procedure 57, and to issue injunctive relief under Federal Rule of Civil Procedure 65.

7.    An actual controversy exists between the parties involving substantial constitutional issues, in that Plaintiffs allege that Defendants' policies, procedures, directives and actions taken in accordance with them violate the United States Constitution and have infringed Plaintiffs' rights, while Defendants will allege that their policies, procedures, directives, and actions comport with the U.S. Constitution and Massachusetts law.

8.    This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, including a reasonable attorney's fee, under 42 U.S.C. § 1988.

**PARTIES**

9.    Stephen Foote is a resident of the Town of Ludlow and is the father of B.F. and G.F., minor children who are students in Ludlow Public Schools.

10.    Marissa Silvestri is a resident of Connecticut and is the mother of B.F. and G.F., minor children who are students in Ludlow Public Schools.

11.     B.F. is the daughter of Stephen Foote and Marissa Silvestri and at all times relevant to the claims set forth herein was and is a student in Ludlow Public Schools.

12.     G.F. is the son of Stephen Foote and Marissa Silvestri and at all times relevant to the claims set forth herein was and is a student in Ludlow Public Schools.

13.     Jonathan Feliciano is a resident of the Town of Ludlow, the husband of Sandra Salmeron, and is the father of two children who attend Ludlow Public Schools.

14.     Sandra Salmeron is the wife of Jonathan Feliciano, a resident of the Town of Ludlow, and the mother of two children who attend Ludlow Public Schools.

15.     Defendant Town of Ludlow ("Town"), with a principal address of 488 Chapin Street Ludlow, MA 01056 is a body corporate under G.L. c. 40 §1, with the authority to sue and be sued under G.L. c. 40 §2.

16.     Defendant Ludlow School Committee, with a principal address of 205 Fuller Street Ludlow, MA 01056, is the governing board with final policymaking authority over the Town's public school system.  G.L. c. 71 § 37.

17.      Defendant Lisa Nemeth is the Interim Superintendent of Ludlow Public Schools. Pursuant to G.L. c. 71 § 59 Superintendent Nemeth is required to manage the school district in a fashion consistent with the United States

4

Constitution, state law and the policy determinations of the School Committee. She is sued in her individual and official capacities.

18.     Defendant Todd Gazda was at all times relevant herein the Superintendent of Ludlow Public Schools until July 2021. Pursuant to G.L. c. 71 §59 until July 2021, Defendant Gazda was required to manage the school district in a fashion consistent with United States Constitution, state law and the policy determinations of the School Committee. He is sued in his individual and official capacities.

19.     Defendant Stacy Monette was at all times relevant to Plaintiffs' claims Principal at Baird Middle School, which is part of Ludlow Public Schools. She is sued in her individual and official capacities.

20.     Defendant Marie-Claire Foley is, and at all relevant times was, School Counselor at Baird Middle School, which is part of Ludlow Public Schools. She is sued in her individual and official capacities.

21.     Defendant Jordan Funke was at all times relevant to Plaintiffs' claims, until May 2021, librarian at Baird Middle School, which is part of Ludlow Public Schools. She is sued in her individual and official capacities.

## FACTUAL ALLEGATIONS

**Development of statewide guidance for school policies related to transgender students**

22.    In June 2012, the Massachusetts Board of Elementary and Secondary Education (Board) revised the Access to Equal Education Opportunity Regulations, 603 CMR 26.00, to include gender identity as a protected class to conform to the Legislature's revision of Massachusetts' student anti-discrimination provision in Mass. G.L. c. 76, §5.

23.    The Board directed the Department of Elementary and Secondary Education ("DESE") to provide guidance to school districts to assist in implementing the revised regulations.

24.    In response to the Board's directive, DESE published "Guidance for Massachusetts Public Schools Creating a Safe and Supportive School Environment," ("Guidance") offering suggestions for school policies and procedures to address the changes in laws and regulations.

25.    The Guidance document has not been adopted as a regulation nor enacted as a statute and therefore does not mandate particular policies or have the force of law.

26.    On March 26, 2013, then-DESE Commissioner Mitchell Chester stated at a  public meeting that the Guidance is not a mandate, but advice offered to school administrators and staff.

27.     In the Guidance, DESE suggests that:

Consistent with the statutory standard, a school should accept a student's assertion of his or her gender identity when there is "consistent and uniform assertion of the gender-related identity, or any other evidence that the gender-related identity is sincerely held as part of a person's core identity." If a student's gender-related identity, appearance, or behavior meets this standard, the only circumstance in which a school may question a student's asserted gender identity is where school personnel have a credible basis for believing that the student's gender-related identity is being asserted for some improper purpose. https://www.doe.mass.edu/sfs/lgbtq/ GenderIdentity.html

28.     The Guidance further suggests:

Some transgender and gender nonconforming students are not openly so at home for reasons such as safety concerns or lack of acceptance. School personnel **should speak with the student first before discussing a student's gender nonconformity or transgender status with the student's parent or guardian**. For the same reasons, school personnel should discuss with the student how the school should refer to the student, *e.g.,* appropriate pronoun use, in written communication to the student's parent or guardian. *Id.* (emphasis added).

29.     In the Guidance, DESE states that in the case of "young students"

parents should be consulted regarding issues of disclosure of the students' assertion

of a discordant gender identity. *Id.* The Guidance does not define "young students."

30.     DESE's Guidance also says:

Transgender and gender nonconforming students may decide to discuss and express their gender identity openly and may decide when, with whom, and how much to share private information. A student who is 14 years of age or older, or who has entered the ninth grade, may consent to disclosure of information from his or her student record. **If a student is under 14 and is not yet in the ninth grade, the student's parent (alone) has the authority to decide on disclosures and other student record matters.**

7

*Id.* (emphasis added) (citing Section 23.01 of Title 603 of the Code of Massachusetts Regulations (603 CMR§23.01).

31.     Information regarding a student's sex, name change for gender identity purposes, gender transition, medical or mental health treatment related to gender identity, or any other information of a similar nature, regardless of its form, is part of the individual's student record, subject to 603 CMR §23.01.

32.     Pursuant to 603 CMR §23.01 consent to disclosure of information regarding a student's sex, name change for gender identity purposes, gender transition, and/or medical or mental health treatment related to gender identity lies exclusively with parents until the student is in ninth grade or age 14, unless a local school committee has adopted an alternative policy.

**Defendants' Re-interpretation of DESE Guidance And Development of Protocol to Conceal Information From Parents.**

33.     Plaintiffs are informed and believe and based thereon allege that the School Committee has not adopted a formal written policy superseding 603 CMR §23.01 to provide students under the age of 14 or below grade 9 with the sole authority to give or withhold consent to disclosure of information regarding sex, name change for gender identity purposes, gender transition or medical or mental health treatment related to gender identity.

34.     Plaintiffs are informed and believe and based thereon allege that the School Committee, acting as final policymaker for the Town, has re-interpreted the DESE guidance as a mandate requiring that staff shall not speak with parents regarding gender identity issues at all unless the child consents, instead of suggesting that school personnel should speak with a student first before discussing gender identity issues with parents.

35.     Plaintiffs are informed and believe and based thereon allege that the School Committee, acting as final policymaker for the Town, has used its reinterpretation of the DESE Guidance to give children of any age the authority to determine whether their parents will be notified about decisions related to affirming the child's discordant gender identity, which is a mental health issue, thereby usurping Plaintiffs' fundamental parental rights to direct the upbringing and mental health care of their children.

36.     Plaintiffs are informed and believe and based thereon allege that the School Committee and individual Defendants have used the School Committee sanctioned re-interpretation of DESE Guidance to establish and implement a protocol (hereinafter sometimes "Protocol") that parents are not to be informed of their child's transgender status and gender-affirming social transition to a discordant gender identity unless the child, of any age, consents.

37.     Plaintiffs are informed and believe and based thereon allege that until July 2021 Defendant Gazda as Superintendent of Ludlow Public Schools implemented the Protocol throughout Ludlow Public Schools so that administrators, teachers, counselors and other staff at all schools would conceal from parents information regarding their child's transgender status and social transition to a discordant gender identity, including adoption of alternative names and pronouns, unless the child consented.

38.     Plaintiffs are informed and believe and based thereon allege that from July 2021 to the present Defendant Nemeth, as Interim Superintendent of Ludlow Public Schools, has continued to implement the Protocol throughout Ludlow Public Schools so that administrators, teachers, counselors and other staff at all schools conceal from parents information regarding their child's transgender status and social transition to a discordant gender identity, including adoption of alternative names and pronouns, unless the child consents.

39.     Plaintiffs are informed and believe and based thereon allege that Defendant Stacy Monette in her role as Principal implemented the Protocol at Baird Middle School so that administrators, teachers, counselors, and other staff conceal from parents, including Plaintiffs, information regarding their child's transgender status and social transition to a discordant gender identity, including adoption of alternative names and pronouns, unless the child consents.

40.     Plaintiffs are informed and believe and based thereon allege that the Protocol continues to be implemented in all schools in Ludlow Public Schools, meaning that District staff are directed to deliberately and intentionally conceal from parents, including all Plaintiffs, information regarding their child's (regardless of age) transgender status and social transition to a discordant gender identity, including adoption of alternative names and pronouns, unless the child consents.

41.     Plaintiffs are informed and believe and based thereon allege that the Protocol further provides that District staff are to deliberately deceive parents, including all Plaintiffs, by continuing to refer to their child by his or her birth name and pronouns in the presence of the parents, but to use the child's preferred alternative name and pronouns at all other times.

42.     Plaintiffs are informed and believe and based thereon allege that throughout the time that they have sanctioned and implemented the Protocol, Defendants have known or have reason to know that "social transitioning," including assertion of an alternate name and pronouns, is recognized as a medical/mental health treatment for children with gender dysphoria[1]:

> For young transgender children, the treatment of gender dysphoria consists of social transition, which involves changes that bring the child's outer appearance and lived experience into alignment with the child's core gender. Changes often associated with a social transition

---

[1]     By describing gender affirmation as a medical/mental health treatment for gender dysphoria, plaintiffs are not waiving any claims to challenge the medical or scientific validity of such therapies.

11

include changes in clothing, name, pronouns, and hairstyle. *Adams v. The Sch. Bd. of St. Johns Cty, Fla.,* No. 3:17-cv-00739, (M.D.Fla. June 28, 2017), Diane Ehrensaft Exp. Rep. 10-11 ECF 137-2.

"Social role transition is a critical component of the treatment for Gender Dysphoria" for adults and children. *G.G. v. Gloucester Cty Sch. Bd.*, No. 4:15-cv-54 (E.D.Va. June 11, 2015) Randi Ettner Correct Exp. Decl. 5, ECF 58-2

43.    By engaging in "social transitioning" with children, as provided in the Protocol, Defendants are "implementing a psychosocial treatment..."[2] without the knowledge or consent of parents.

44.    Defendants know or should know that under Massachusetts law, parents must consent to medical treatment, including mental health treatment, of their children under age 18 unless the child is emancipated, married, in the armed forces, pregnant or contracted a sexually transmitted disease, none of which applies to Plaintiffs' children. M.G.L. ch. 231, §85P, M.G.L. ch. 112 §12F.

45.    By approving and implementing the Protocol, Defendants are acting contrary to law by deliberately concealing from Plaintiffs that their minor children are receiving mental health care, *i.e.* social transitioning to a discordant gender identity, at school without the parents' knowledge or consent.

---

[2]    Kenneth Zucker*, The Myth of Persistence: Response to "A Critical Commentary on Follow-Up Studies & 'Desistance' Theories about Transgender & Gender Non-Conforming Children" by Temple Newhook et al.*, 19:2 INTERNATIONAL JOURNAL OF TRANSGENDERISM 231 (2018), https://www.researchgate.net/publication/325443416.

46.     Plaintiffs are informed and believe and based thereon allege that as part of implementing the Protocol, the School Committee acting as final policymaker for the Town has sanctioned, and individual Defendants have implemented customs, practices and procedures that introduce and promote the concept of gender-affirming social transitioning, *i.e.,* mental health treatment, and experimentation with discordant gender identities to children without the knowledge or consent of their parents.

47.     Among the customs, practices and procedures implemented by individual Defendants was Defendant Funke's practice of directing incoming sixth grade students at Baird Middle School to create biographic videos in which they were to state their "gender identity" and preferred pronouns and upload the videos onto school owned platforms.

48.     The videorecording and identification of a gender identity (an aspect of mental health) was done without the knowledge and consent of parents.

49.     Plaintiffs Foote and Silvestri became aware after the fact that their 11-year-old daughter, B.F. was given that video and identification assignment.

50.     Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that their son G.F. was also given the video and identification assignment by Defendant Funke without their knowledge and consent.

51.     It remains unknown to Plaintiffs Foote and Silvestri how these videos of their children, made without their consent, were used or who has been allowed to view them.

52.     Plaintiffs are informed and believe and based thereon allege that Defendant Funke, acting in accordance with the Committee's approved Protocol and with the knowledge and consent of other individual Defendants, engaged in other customs, practices and procedures aimed at promoting exploration and experimentation of discordant gender identities and engaging in gender-affirming social transitioning, concepts which involve mental health issues, to Plaintiffs' children and other Baird Middle School students without notice to or consent of parents, including Plaintiffs.

53.     Plaintiffs are informed and believe and based thereon allege that Defendant Funke regularly communicated privately with their children one-on-one to discuss their gender identity (mental health) issues, provide materials promoting exploration of alternate gender identities, and otherwise encourage children to experiment with alternate gender identities without notifying parents or obtaining parental consent.

54.     Plaintiffs are informed and believe and based thereon allege that Defendant Funke instructed their children not to use the terms "boys" and "girls,"

14

but to use alternative terms rooted in gender identity ideology, which were posted on the walls of the library and circulated to students as a handout.

55.    Plaintiffs were not informed of Defendant Funke's efforts to compel their children to speak falsely (in accordance with the ideology being promoted by Defendant Funke) and to conceal important information from their parents.

56.    Plaintiffs are informed and believe and based thereon allege that other teachers, counselors and staff, with the knowledge and consent of Defendants in accordance with the Committee's Protocol, engaged in other customs, practices and procedures to introduce and promote the concepts of experimenting with discordant gender identities and engaging in gender-affirming social transitioning (which involves mental health treatment), to their children and other students without notice to or consent of parents, including Plaintiffs.

57.    Because Defendants' Protocol requires secrecy, full information regarding the customs, practices and procedures utilized by school staff to introduce and facilitate gender-affirming social transitioning to Plaintiffs' children (and others) has been concealed from Plaintiffs.

**Defendants' Implementation of the Protocol with Plaintiffs' Children**

58.    On or about December 14, 2020, B.F., then an 11-year-old sixth grade student at Baird Middle School, asked to meet with her teacher Bonnie Manchester virtually after school to discuss some issues.

59.     On December 15, 2020, B.F. met virtually with Ms. Manchester and told her that she was experiencing insecurity, low self-esteem, poor self-image, and a perceived lack of popularity.

60.     Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that prior to the meeting with Ms. Manchester B.F. had received unsolicited LGBTQ-themed video suggestions on her school Google account on her school-issued computer

61.     Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that after viewing these suggested videos B.F. began questioning whether she might be attracted to girls and whether she might have "gender identity" issues.

62.     B.F. told Ms. Manchester that she was depressed and needed help but was not sure how to ask her parents about getting help.

63.     Ms. Manchester offered to call B.F.'s parents and B.F. agreed. B.F. told Ms. Manchester that she was relieved and grateful that Ms. Manchester was calling her parents because B.F. was unsure how to broach the subject.

64.     On December 16, 2020, during a planning meeting, Ms. Manchester and other teachers said that they had observed that B.F. seemed to be depressed and agreed that B.F.'s parents should be contacted. Ms. Manchester agreed to contact them since she had already discussed doing so with B.F.

65.     On December 17, 2020, Ms. Manchester contacted Mrs. Silvestri and informed her of the conversation with B.F. and concerns about B.F. feeling depressed.

66.     Ms. Manchester also told Mrs. Silvestri that B.F. had said that she might be attracted to the same sex and was having issues with self-image.

67.     Mrs. Silverstri responded that she had recently observed that there was something troubling B.F. and that she had struggled with self-image issues at B.F.'s age.

68.     Mrs. Silvestri was grateful that Ms. Manchester had contacted her so that she and the children's father, not the school, could address B.F.'s mental health issues.

69.     Mrs. Silvestri and Mr. Foote retained a private therapist to work with B.F. soon after the call with Ms. Manchester.

70.     On December 21, 2020, Mrs. Silvestri sent the following email to B.F.'s teachers, Defendant Monette, Defendant Gazda, and the members of Defendant School Committee:

> It has been brought to the attention of both Stephen and myself that some of B's teachers are concerned with her mental health. I appreciate your concern and would like to let you know that her father and I will be getting her the professional help she needs at this time. With that being said, we request that you do not have any private conversations with B. in regards to this matter. Please allow us to address this as a family and with the proper professionals.

17

71.     Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that Defendants Gazda and Monette and Baird Middle School teachers who had received the email disregarded the parents' instructions and Defendants Gazda and Monette failed and refused to direct Baird Middle School staff to respect Plaintiffs' instructions regarding their 11-year-old daughter's mental health care.

72.     Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that prior to June 2021 Defendant Gazda, and since June 2021 Defendant Nemeth, along with Defendant Monette and Baird Middle School teachers who received the email, have and are continuing to disregard the parents' instructions, as evidenced by the fact that Plaintiffs are now aware that B.F. has changed her preferred name at least twice since December 2020 without Plaintiffs' knowledge or consent. To this date staff continue to address B.F. by whatever iteration of her name she has indicated she prefers.

73.     Teachers at Baird Middle School have inadvertently revealed that they are continuing to disregard the parents' instructions by sending email communications related to school assignments for B.F., but referencing a child with a first name other than "B."

74.     Plaintiffs Foote and Silvestri have learned that, in reckless disregard of their parental rights to make mental health decisions for their children and in direct

contravention to their explicit instructions, Baird Middle School staff, and in particular Defendant Foley, have engaged in regular private meetings and conversations with B.F. in which B.F. has talked about having a discordant gender identity and requested to be affirmed in that identity and called by a male name "R," *i.e.,* engage in gender-affirming social transitioning (mental health treatment). In addition, Baird Middle School staff and Defendant Foley in particular intentionally concealed that information from Plaintiffs in accordance with the Protocol.

75.   Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that Defendants Funke and Monette and other Baird Middle School staff have also disregarded and are continuing to disregard the parents' instructions and the parents' right to make mental health decisions for their son G.F.

76.   G.F. has been diagnosed with ADHD and has in place an Accommodation Plan under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et. seq.* ("504 Plan").

77.   Defendants knew or should have known of G.F.'s status as a 504 Plan recipient and that such status meant that G.F. had underlying mental health issues which required parental notice and input.

78.   Plaintiffs Foote and Silverstri are informed and believe and based thereon allege that Defendants Funke and Monette and other Baird Middle School staff, knowing that G.F. had underlying mental health issues requiring parental

notice and input, engaged in private meetings and conversations with G.F. on multiple occasions to promote experimenting with alternative genders and facilitate his gender-affirming social transitioning, *i.e.* offer mental health treatment.

79.     Said Baird Middle School staff did not notify Plaintiffs of these private meetings and conversations, but followed the Protocol to conceal the gender-affirming social transitioning of G.F. from Plaintiffs Foote and Silvestri in the same manner as they concealed the gender-affirming social transitioning of B.F.

80.     Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that Defendants have stated in writing in G.F.'s student health record that G.F.'s discordant gender identity and alternate name are to be concealed from his parents and that staff are to intentionally deceive parents by using "G.F." in their presence and G.F.'s alternate name at all other times.

**Plaintiffs Discover Defendants' Subterfuge**

81.     Unbeknownst to Plaintiffs, on February 28, 2021, B.F. sent the following email to Defendant Foley, Defendant Gazda, and teachers at Baird Middle School, including Ms. Manchester:

> Hello everyone, If you are reading this you are either my teacher or guidance counselor. I have an announcement to make and I trust you guys with this information. I am genderqueer. Basically, it means I use any pronouns (other than it/its). This also means I have a name change. My new name will be R****.  Please call me by that name. If you deadname me or use any pronouns I am not comfortable with I will politely tell you. I am telling you this because I feel like I can trust you. A list of pronouns you can use are: she/her he/him they/them

20

fae/faerae/aer  ve/ver xe/xem ze/zir. I have added a link so you can look at how to say them. Please only use the ones I have listed and not the other ones. I do not like them. Thank you. R*** F***.

82.    Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that the text of the email sent by B.F. resembles sample emails found on internet sites that promote gender ideology and offer resources to children and adolescents.

83.    Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on March 1, 2021, Defendant Foley sent an email after meeting privately with B.F., in direct contradiction to their explicit instructions, and wrote: "R**** [B****] is still in the process of telling his [sic] parents and is requesting that school staff refer to him [sic] as B**** and use she/her pronouns with her parents and in written emails/letters home."

84.    In so doing, Defendant Foley was, in keeping with the School Committee sanctioned Protocol, directing Baird Middle School staff to deliberately and intentionally deceive Plaintiffs Foote and Silvestri by actively concealing the fact that school staff were engaging in gender-affirming social transitioning (mental health treatment) of their daughter by affirming an alternative name and identity.

85.    Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on March 1, 2021 some teachers at Baird Middle School

immediately began to refer to B.F. as "R" and to change name tags to reflect that name without notifying B.F.'s parents, in keeping with the Protocol.

86.    Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on or about March 1, 2021, Defendant Foley referred B.F. to Defendant Funke for further private meetings and conversations to promote and facilitate B.F.'s gender-affirming social transitioning (mental health treatment) without notifying Plaintiffs.

87.    Mr. Foote and Mrs. Silvestri only learned about B.F.'s February 28, 2021 email to her teachers and counselors after a conversation with Ms. Manchester.

88.    Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on March 8, 2021, after the conversation between Plaintiffs and Ms. Manchester, Ms. Foley sent an email to the entire staff at Baird Middle School informing them of B.F.'s request to be called "R***" and explicitly instructing staff that her parents were not to be told.

89.    Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on and before March 4, 2021 G.F.'s teachers at Baird Middle School were also complying with and implementing the Protocol with regard to G.F. and facilitating G.F.'s gender-affirming social transitioning without the knowledge or consent of Mr. Foote and Mrs. Silvestri.

22

90.     Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on March 10, 2021 during a planning meeting, Ms. Manchester and other Baird Middle School teachers discussed B.F.'s email and discussed that they were also calling B.F.'s brother G.F. by his preferred name "S."

91.     Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that during the planning meeting on March 10, 2021 Ms. Foley told the teachers present that "the law" says that school staff do not have to tell parents about their children's requests to change their name or otherwise be socially affirmed in an asserted transgender identity.

92.     Massachusetts law provides that parents exercise access to, and have exclusive control over, information in their child's student record until the child reaches age 14 or enters the ninth grade. *See* 603 CMR §23.07(2).

93.     At the time that Ms. Foley claimed that "the law" does not require informing parents regarding their child's gender identity, B.F. was 11 years old and G.F. was 12 years old, meaning that their parents, Plaintiffs Foote and Silvestri, had the right to access and control over the information in their records, including their assertions of discordant gender identities, under Massachusetts law.

94.     Even the DESE Guidance, which Defendants know is not a law, does not proscribe notifying parents regarding their children's discordant gender

identities, but merely suggests speaking with students before speaking with parents about the issue.

95.    Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on March 11, 2021, Defendant Foley, without notification to or consent from Mr. Foote or Mrs. Silvestri, initiated a private conversation with B.F. through an online chat inquiring about issues related to her gender identity, *i.e.*, mental health.

96.    Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on March 11, 2021, Defendant Foley, without notification to or consent from Mr. Foote or Mrs. Silvestri privately informed B.F. that she could use any bathroom that she preferred, including the boys' bathroom, girls' bathroom, or one of three gender neutral bathrooms at the school. Defendant Foley offered to show B.F. where the gender neutral bathrooms were located.

97.    Therefore, as of March 11, 2021, Mr. Foote's and Mrs. Silvestri's 11-year-old daughter was being told that she could use the boys' privacy facilities at school, where she would be exposed to middle school boys in various states of undress and vice-versa, without Mr. Foote and Mrs. Silvestri being informed or consenting to same.

98.    Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on March 11, 2021, Defendant Foley told B.F. in an online chat

that B.F. was "brave and awesome" for telling her teachers and guidance counselor that she was "genderqueer" and wanted to be referred to by the name "R."

99.     On March 18, 2021, Plaintiffs Foote and Silvestri met with Defendant Monette to discuss the Defendants' disregard of the Plaintiffs' parental rights and of the Plaintiffs' specific instructions that school staff not engage with their children regarding mental health issues, which they were addressing with the help of a mental health professional, in keeping with their fundamental parental rights to direct the mental health care of their children.

100.    Mr. Foote and Mrs. Silvestri attempted to discuss the issues related to their children with Defendant Monette and to convey that Defendants were acting improperly and illegally in disregarding their parental rights and failing to notify them regarding their children's assertion of discordant gender identities and names.

101.    Defendant Monette refused to discuss the issues with Mr. Foote and Mrs. Silvestri, but intimated that the school knew better than did the parents about what was best for B.F. and G.F. with regard to the gender identity issue and abruptly ended the meeting.

102.    On March 21, 2021, Mrs. Silvestri informed Defendant Gazda that she and Mr. Foote objected to the staff's deliberate disregard of their rights as parents to make decisions regarding their children's mental health and upbringing evident in

concealing information regarding the gender-affirming social transitioning of their children.

103.   Mrs. Silvestri said that their children telling teachers and fellow students "that they want to be called by a different name (of the opposite sex) is something that will follow the children through school and not be forgotten by classmates."

104.   Mrs. Silvestri told Mr. Gazda that parents, not the school, should be the primary source of help and guidance to navigate their children through such decisions with long-term effects, and the school's exclusion of her and Mr. Foote from that decision-making was unacceptable.

105.   Mrs. Silvestri reminded Mr. Gazda that no one to whom their original December 20, 2020 email was addressed responded. Instead, the parents were ignored by teachers, guidance counselors, Ms. Monette, Mr. Gazda, and the School Committee, who utterly disregarded the parents' explicit instructions to not engage in conversations with their children related to their mental health to permit the parents to exercise their primary authority to oversee their children's mental health care.

106.   Mr. Gazda acknowledged that he and the School Committee had received the parents' December 20, 2020 email, but that neither he nor anyone from the School Committee had responded.

107.   Mr. Gazda expressly asserted that Ms. Foley acted appropriately in concealing information from Plaintiffs when B.F. sent the February 28, 2021 email to Baird Middle School teachers and Ms. Foley.

108.   Mr. Gazda stated that Ms. Foley properly followed DESE Guidance that "School personnel should speak with the student first before discussing a student's gender nonconformity or transgender status with the student's parent or guardian" when she forwarded the B.F.'s February 28, 2021 email to other staff and told staff that parents were not to be told.

109.   Mr. Gazda's statement that directing school staff to conceal information from parents was a proper action by Ms. Foley evidences that Mr. Gazda was aware of and approved the School Committee's sanctioned Protocol granting children of any age the power to determine whether their parents will be informed about the child's gender-affirming social transitioning (mental health treatment).

110.   Mr. Gazda further evidenced his knowledge and acceptance of the Protocol when he told Mrs. Silvestri that Defendant Foley's directive to staff that Plaintiffs not be informed of their daughter's preferred alternate pronouns and be intentionally misinformed and lied to in conversations concerning their daughter was an appropriate response in light of the DESE Guidance suggesting that staff speak to children first.

111.   Mr. Gazda further claimed that concealing information regarding Plaintiffs' 11-year-old daughter's asserted discordant gender identity and alternate names and pronouns did not violate 603 CMR §23.01 because no "disclosure" was made, presumably meaning that there was no disclosure to a third party.

112.   Mr. Gazda did not explain how a regulation that granted Plaintiffs access and control of their children's records could be utilized to deny them access to information in those records.

113.   Mr. Gazda reiterated his conclusions during a meeting with Mr. Foote and Mrs. Silvestri on March 26, 2021, but still did not explain how DESE suggestions about speaking with students about gender identity issues before speaking with parents could be interpreted to mean that minor students had absolute veto power over their parents being informed about their child's social transitioning.

114.   At the March 26, 2021 meeting, Mr. Foote and Mrs. Silvestri again demanded that school staff not talk to their children about discordant gender identities and that school staff use the children's proper names, but they received no response.

115.   Plaintiffs Foote and Silverstri are informed and believe and based thereon allege that Ms. Foley, Ms. Funke and perhaps other staff members at Baird Middle School continued to knowingly, intentionally, and recklessly disregard Mr. Foote's and Mrs. Silvestri's explicit instructions not to engage with their children

regarding alternative genders, preferred names, and mental health issues by surreptitiously setting up meetings to discuss B.F.'s and G.F.'s assertion discordant gender identities without the knowledge and consent of their parents.

116.   Plaintiffs Foote and Silverstri are informed and believe and based thereon allege that, without the knowledge or consent of the Plaintiffs, Ms. Funke directed 11-year-old B.F. to translategender.org, an organization with which Funke is affiliated that "works to generate community accountability individuals to self-determine their own genders and gender expressions."

117.   Plaintiffs Foote and Silverstri are informed and believe and based thereon allege that Ms. Funke used translategender.org to groom 11-year-old B.F. through promotion of materials and events, including workshops entitled "Green, Yellow, Red, Stoplights For Mental Health," and "The Sex Education You Didn't Get in School," without the knowledge or consent of her parents.

118.   Plaintiffs Foote and Silverstri are informed and believe and based thereon allege that after they had repeated their request to Principal Monette and Superintendent Gazda that Baird Middle School staff cease talking with their children regarding gender issues, Ms. Foley encouraged B.F. to meet privately with her weekly to discuss B.F.'s gender issues and mental health and to promote and facilitate B.F.'s social transition.

119.   Plaintiffs Foote and Silverstri are informed and believe and based thereon allege that on March 30, 2021, Ms. Foley told B.F. that she was worried about B.F. based on a conversation with B.F. the day before.

120.   Ms. Foley said that she wanted B.F. to speak to another counselor, "I can't be the only person that you talk to because we don't have enough time together and I can't be there to keep you safe," thereby signaling to B.F. that her parents were not "safe."

121.   Despite claiming to be concerned about B.F.'s safety, Ms. Foley did not contact B.F.'s parents to share her concerns, further evidencing that Ms. Foley was implying that B.F.'s parents were "unsafe."

122.   Plaintiffs Foote and Silverstri are informed and believe and based thereon allege that when B.F. informed Ms. Foley that she was seeing a counselor chosen by her parents, Ms. Foley questioned whether B.F. was as comfortable discussing issues with that counselor as she was discussing issues with Ms. Foley.

123.   Ms. Foley's question sent a message to B.F. that her parents' choice might not be in her best interest.

124.   Ms. Foley further stated that she believed that B.F. needed to get help and support, sending the message to B.F. that her parents could not be trusted to provide help and support.

125.   Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that Ms. Foley continued to question whether B.F.'s parents were providing B.F. with appropriate care in online chats in which she asked B.F. whether the counselor chosen by her parents was providing adequate care, and in stating that she was "behind" B.F., sending the message that B.F. needed further or different care than was being offered by her parents.

126.   Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on April 7, 2021, Ms. Foley again questioned whether B.F.'s parents were properly caring for B.F. in an online chat in which Ms. Foley asked B.F. whether B.F. could keep herself safe when she was feeling down.

127.   Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that throughout April and May 2021, Ms. Foley continued to surreptitiously correspond with B.F. via online chats and text messages and continued to affirm and applaud B.F.'s assertion of alternate genders and alternate names, intentionally disregarding B.F.'s parents' rights to direct their daughter's mental health care and their explicit instructions that Baird Middle School staff was not to engage in such conversations with their children.

128.   Ms. Foley's continuing surreptitious meetings with B.F. and repeated questioning of Plaintiffs' decisions regarding B.F.'s care has interfered with and is

interfering with Plaintiffs' exercise of their right to direct B.F.'s mental health care as well as disrupting the parent-child relationship.

129.   On April 23, 2021, Mr. Foote received a card in the mail addressed to "R F****," congratulating "R. F****," Mr. Foote's daughter B.F., for winning a bumper sticker contest put on by one of her teachers. The teacher enclosed an Amazon Gift Card with "Congratulations R" written on it, demonstrating Defendants' continuing adherence to the Protocol and blatant disregard for Plaintiffs' parental rights.

130.   Defendants' conduct in encouraging young students to conceal important information from their parents and undermining parental authority explicitly and implicitly by openly questioning their parents' decisions violates Plaintiffs' fundamental parental rights to direct the upbringing of their children, make mental health decisions for their children and protect family integrity and privacy.

131.   As to Plaintiffs Feliciano and Salmeron, Defendants' conduct also infringes on their sincerely held religious beliefs which include respect for parental authority, truthfulness, and adherence to a Biblical understanding of male and female, commandment to honor one's parents, and standards of behavior, all of which are disregarded in the Protocol.

132.   Because the intent of the Protocol is to conceal information from parents, Plaintiffs Feliciano and Salmeron are deliberately hindered from ascertaining whether their children are being secretly socially transitioned, *i.e.*, being provided mental health treatment, without their knowledge or consent.

133.   Defendants and other staff in Ludlow Public Schools acting under the authority and direction of Defendants Gazda, Nemeth, Monette, and the School Committee acting as final policymaker for the Town have intentionally acted in reckless disregard of Plaintiffs' rights to direct the upbringing and mental health care of their children and in direct contravention of Plaintiffs Foote and Silverstri's explicit instructions to Defendant Gazda, Defendant Monette, the School Committee, and other Ludlow Public Schools staff.

### Defendants' Public Ratification of the Protocol and Derogation of Parental Rights

134.   Members of Defendant School Committee and Mr. Gazda have publicly acknowledged and ratified the existence and continuing implementation of the Protocol and its intentional and purposeful concealment of children's mental health information from parents.

135.   Plaintiffs are informed and believe and based thereon allege that Ms. Monette terminated Ms. Manchester for failing to comply with the Protocol and respecting the rights of B.F.'s parents by providing them information regarding their 11-year-old daughter's assertion of a discordant gender identity, further

33

demonstrating that the Protocol was an established procedure sanctioned by the School Committee acting as final policymaker for the Town and implemented by District leadership.

136.   On May 25, 2021 during a School Committee public meeting, a tenth grade student in Ludlow Public Schools submitted a public comment via email, which was the only participation vehicle that the School Committee provided for the public meeting that was held in an empty meeting room.

137.   In the email read aloud during the meeting, the writer said that staff members were pushing extreme ideas to children 11 to 14 years old as part of an agenda aimed at "trying to convince children to change who they are and change their sexuality and gender at an age that many of them do not yet fully understand the concepts of sexuality and gender." The writer further stated that the School Committee and staff were ignoring parents' rights.

138.   After the email was read, Mr. Gazda read a prepared rebuttal. Mr. Gazda did not dispute the District's actions alleged in the statement, but instead defended the conduct, saying the District's actions were about "inclusion" and making schools "safe" for children.

139.   Mr. Gazda's statements imply that children are not "safe" with their parents.

140.   Mr. Gazda also stated publicly what he had told Plaintiffs privately, *i.e.,* that the District's actions (*e.g.,* the Protocol) are "in compliance" with the laws and regulations of Massachusetts and DESE Guidance.

141.   Mr. Gazda further stated publicly, without refutation from the School Committee, that parents' concerns about the concealment of information amounted to "intolerance of LGBTQ people thinly veiled" behind a "camouflage of parental rights."

142.   Mr. Gazda further stated that schools, not homes, are the true "safe space" for children because schools supply "caring adults" where students can discuss problems and find support for their "true identities," implying that children do not receive such care from their parents. He said, "For many students school is their only safe place, and that safety evaporates when they leave the confines of our buildings," sending the message that safety is not to be found in their parents' homes.

143.   Mr. Gazda said that the middle school would absolutely continue to help the children "express who they are" despite parents' wishes to the contrary.

144.   Defendant School Committee, acting as final policymaker for the Town, has condoned and facilitated the continued implementation of the Protocol, and in particular the intentional and blatant disregard for parental rights reflected in concealing information from parents regarding their children's gender-affirming social transitioning and in actively deceiving parents by directing staff to use

children's given names and pronouns when speaking with parents but using the child's asserted preference for alternative names and pronouns at all other times.

145.   Defendant School Committee's action and inaction have evidenced its adoption of the Protocol as *de facto* policy in public statements, including those at the June 8, 2021 public meeting.

146.   After an emailed public comment from a group of parents was read during the June 8, 2021 meeting, then Committee Chairman Michael Kelliher repeated Defendant Gazda's claim that the District's actions were "in compliance" with state and federal laws. Mr. Kelliher defended the actions of district staff as "simply doing their jobs" of "being welcoming and supporting to the children."

147.   Expressing disdain and disregard for the rights of Ludlow Public School parents, Mr. Kelliher said that parents who were making their concerns known to the Committee were opposing "inclusive policies of the Ludlow Public Schools" and were "under the spell" of "outside groups."

148.   At the June 8, 2021 School Committee meeting Mr. Gazda further evidenced Defendants' disdain and disregard for parental and religious exercise rights by characterizing parents' concerns about not being notified and their decisions not being honored regarding their children's upbringing and gender identity issues as "prejudice and bigotry."

149.   No committee member has disagreed with or corrected Mr. Gazda's and Mr. Kelliher's public statements or otherwise refuted that the District's accepted Protocol, *i.e. de facto* policy, was to conceal critical information regarding their children's upbringing and mental health from parents and to disregard parents' instructions regarding their children's assertion of a discordant gender identity.

150.   As parents of children who attend Ludlow Public Schools, all of the Plaintiffs are subjects of Defendants' Protocol, actions, disdain, and attendant reckless disregard for their fundamental rights.

151.   So long as the Protocol remains in effect and is being implemented by Defendants, Plaintiffs continue to suffer deprivation of their fundamental parental rights to direct the upbringing of their children and particularly to direct the mental health care of their children.

152.   So long as the Protocol remains in place, Plaintiffs' children are subject to surreptitious meetings, conversations, counseling sessions, online chats, and other communications with Ludlow Public Schools staff regarding and even promoting socially transitioning to a discordant gender identity, a recognized form of mental health care, without the knowledge or consent of their parents.

153.   Plaintiffs' parental rights continue to be violated by the Protocol's instructions that parents are to be deliberately deceived by staff who are directed to use their child's legal name and pronouns corresponding to their sex when speaking

with parents, but children's preferred alternative names and pronouns at all other times in school-related communications.

154.   The continuing existence and implementation of the Protocol also infringes on and violates Plaintiffs Feliciano's and Salmeron's rights to free exercise of religion in that their sincerely held religious beliefs require truthfulness in speech, obedience to parents, and that their children's identities as being created male or female be respected regardless of contrary personal beliefs and ideologies of school staff members.

155.   Defendants' Protocol that affirms children's desires to be called by an alternate gender discordant name and pronouns and actively promotes the idea that they can socially transition to another gender involves significant mental health decisions affecting children's well-being with potentially life-long consequences. Pursuant to the Protocol, these decisions are being made without the knowledge or consent of parents.

156.   Defendants have acted with reckless disregard for the rights of Plaintiffs Foote and Silvestri as the parents of B.F. and G.F. and substituted their judgment for that of the parents in providing unauthorized mental health counseling and intervention without the knowledge or consent of B.F.'s and G.F.'s fit parents

157.   Defendants have intentionally and purposefully disrupted Plaintiffs' relationships with their children, fostered distrust of parents, caused the children to

question whether their parents can appropriately care for them and keep them safe, and otherwise irreparably harmed the parent-child relationship.

158.   In adopting and continuing to implement the Protocol, Defendants have substituted, and continue to substitute, their judgment for that of the parents in directing the upbringing and mental health care for the children of Ludlow Public Schools.

159. Defendants' actions and public statements evidence a reckless disregard and disdain for the fundamental rights of Plaintiffs regarding decision-making related to children's assertion of a discordant gender identity and request to socially transition, a recognized mental health treatment.

160. Defendants' reckless disregard for the rights of Plaintiffs has impermissibly supplanted the rights of the parents to make mental health decisions and direct the upbringing of their children, interfered with the privacy rights of the family, created uncertainty and distrust between parents and children and between parents and educators, and threatened religious free exercise rights.

161.   Unless and until Defendants, *inter alia*, a) publicly rescind the Protocol, b) cease communicating to and instructing Ludlow Public School staff that parents are not to be notified, c) publicly establish a policy that parents will be notified when children raise issues related to their mental health and discordant gender identity, d) cease meeting with children to provide counsel, advice and advocacy related to

mental health and discordant gender identity without parental notice and consent, e) cease deceiving parents by using one set of names and pronouns when communicating with them and another at school, and f) abide by parents' instructions concerning their child's mental health treatment and assertion of a discordant gender identity, Plaintiffs' fundamental rights to direct the upbringing of their children, to make decisions regarding their children's medical and mental health, right of familial privacy, and free exercise rights will continue to be violated.

162.   Defendants' ongoing violations of Plaintiffs' fundamental parental rights have caused and will continue to cause irreparable harm unless and until discontinued.

## FIRST CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983
### (Violation of Plaintiffs' Substantive Due Process Fundamental Parental Right to Direct the Education and Upbringing of Their Children under the U.S. Constitution)
### (By All Plaintiffs Against all Defendants)

163.   Plaintiffs incorporate the preceding factual allegations in paragraphs 9-162 by reference as if set forth in full.

164.   The Due Process Clause in the 14th Amendment to the United States Constitution protects the fundamental right of parents to direct the upbringing, care, custody, and control of their children. *Pierce v. Society of Sisters*, 268 U.S. 510 (1925); *Troxel v. Granville*, 530 U.S. 57, 68 (2000)

40

165.   Defendants have violated and are continuing to violate Plaintiffs' fundamental right to make decisions regarding the upbringing, custody, care, and control of their children in establishing and implementing the Protocol that prohibits informing parents regarding their children's assertions regarding gender non-conformity, transgender status and attendant requests to affirm alternate identities unless their minor children of any age consent.

166.   Defendants have acted and are continuing to act with reckless disregard for Plaintiffs' fundamental parental rights by purposefully and intentionally concealing critical information and decisions regarding the upbringing and care of their children, *i.e.,* that the children are asserting a discordant gender identity, that the children have requested to be addressed by an opposite sex name and pronouns and other information and decisions associated with affirming the children's assertions.

167.   Defendants have acted and are acting with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience as described *infra.*

**Allegations Regarding School Committee and Town**

168.   Defendant School Committee acting as final policymaker for Defendant Town has acted and is continuing to act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that

41

a) the School Committee knows that the DESE Guidance is not a legal mandate, but claims that it requires that school staff conceal information from parents; b) the School Committee knows that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claims that it supports Defendant's Protocol that parents are not to be told about children's social transitioning unless the child consents; c) the School Committee knows that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but authorizes and sanctions the deliberate concealment of information from parents of children under age 14 unless the child consents; and d) the School Committee knows that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but have approved and implemented a Protocol that directs staff to encourage, facilitate, develop and implement gender-affirming social transitioning, a known mental health treatment, with children under age 18  without informing or gaining consent from parents.

**Allegations Against Defendant Gazda**

169.   Defendant Gazda, as superintendent charged with implementing policies sanctioned by the School Committee through June 2021, acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that a) Mr. Gazda knew that the DESE Guidance is not a legal mandate

but claimed that it requires that school staff conceal information from parents; b) Mr. Gazda knew that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claimed that it supports Defendants' Protocol that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Mr. Gazda knew that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but authorized and directed school staff to deliberately conceal information from parents of children under age 14 unless the child consents; and d) Mr. Gazda knew that under Massachusetts law, parents must be informed of and consent to medical/mental health care for their children who are under 18, but approved and implemented a Protocol that directs staff to encourage, facilitate, develop and implement gender-affirming social transitioning, a known mental health treatment, with children under age 18  without informing or obtaining consent from parents.

170. Defendant Gazda, as superintendent charged with implementing policies sanctioned by the School Committee, through June 2021, acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Mr. Gazda knew that Plaintiffs Foote and Silvestri had exercised their parental rights to direct the upbringing of their children by securing a private therapist for B.F. and requested that school staff not engage with their

children regarding mental health issues. Nevertheless, Defendant Gazda failed to adequately supervise and train employees to not implement the Protocol or actively encouraged employees to implement the Protocol and engage with Plaintiffs' children without notifying Plaintiffs.

171. Defendant Gazda acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Mr. Gazda publicly stated during School Committee meetings that parents with concerns about not being notified and their decisions not being honored regarding their children's gender identity issues (i.e., upbringing) were driven by "prejudice and bigotry," and "under the spell" of "outside groups," and that school officials would continue with their policies regardless of what parents thought.

**Allegations Against Defendant Nemeth**

172. Defendant Nemeth, as interim superintendent charged with implementing policies sanctioned by the School Committee, since June 2021, has acted and is acting with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that a) Ms. Nemeth knows that the DESE Guidance is not a legal mandate, but claims that it requires that school staff conceal information from parents; b) Ms. Nemeth knows that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claims that it supports Defendants' Protocol that parents are not to be told about children's

gender-affirming social transitioning unless the child consents; c) Ms. Nemeth knows that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but nonetheless authorizes and directs school staff to deliberately conceal information from parents of children under age 14 unless the child consents; d) Ms. Nemeth knows that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but implements a Protocol that directs staff to encourage, facilitate, develop and implement gender-affirming social transitioning, a known mental health treatment, with children under age 18 without informing or obtaining consent from parents.

### Allegations Against Defendant Monette

173.   Defendant Monette, as principal of Baird Middle School charged with implementing policies sanctioned by the School Committee at the school, has acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that a) Ms. Monette knew or should have known that the DESE Guidance is not a legal mandate, but claimed that it requires that school staff conceal information from parents; b) Ms. Monette knew or should have known that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claimed that it supports Defendants' Protocol that parents are not to be told about children's gender-affirming social transitioning unless the

child consents; c) Ms. Monette knew or should have known that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but nonetheless authorized and directed school staff to deliberately conceal information from parents of children under age 14 unless the child consents; d) Ms. Monette knew or should have known that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but implemented a Protocol that directs staff to encourage, facilitate, develop and implement gender-affirming social transitioning, a known mental health treatment, with children under age 18  without informing or obtaining consent from parents.

174.   Defendant Monette as principal of Baird Middle School acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Monette knew that Plaintiffs Foote and Silvestri had exercised their parental rights to direct the upbringing of their children by securing a private therapist for B.F. and requested that school staff not engage with their children regarding mental health issues. Nevertheless, Defendant Monette but failed to adequately supervise and train employees to not implement the Protocol or actively encouraged employees to implement the Protocol and engage with Plaintiffs' children without notifying Plaintiffs.

**Allegations Against Defendant Foley**

175.   Defendant Foley, as school counselor at Baird Middle School, has acted and continues to act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that a) Ms. Foley knows or should have known that the DESE Guidance is not a legal mandate, but claims that it requires that school staff conceal information from parents; b) Ms. Foley knows or should have known that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claims that it supports Defendants' Protocol that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Ms. Foley knows or should have known that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but deliberately concealed information and authorized and directed others to deliberately conceal information from parents of children under age 14 unless the child consents; d) Ms. Foley knows or should have known that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but encouraged, facilitated, developed and implemented gender-affirming social transitioning, a known mental health treatment, with children under age 18 without informing or obtaining consent from parents; e) Ms. Foley knows or should have known that under Massachusetts law parents have sole control over their

children's information until children are 14 years old or in grade nine and that parents must consent to mental health treatment for their children, but advised and instructed Baird Middle School staff that the law did not require that staff provide information related to gender identity to parents of children under age 14.

176.   Defendant Foley acted and continues to act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Foley knew that Plaintiffs Foote and Silvestri had exercised their parental rights to direct the upbringing of their children by securing a private therapist for B.F. and requested that school staff not engage with their children regarding mental health issues, but actively engaged with B.F. regarding her mental health issues related to a discordant gender identity without notifying Plaintiffs.

177.   Defendant Foley acted and continues to act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Foley knew that Plaintiffs Foote and Silvestri had exercised their parental rights to direct the upbringing of their children by securing a private therapist for B.F. and requested that staff not engage with their children, but actively and intentionally defied the parents' instructions by soliciting and participating in private meetings with B.F. and questioning whether B.F.'s parents could keep her safe or provide proper therapeutic care.

178.   Defendant Foley acted and continues to act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Foley knew that Plaintiffs Foote and Silvestri had exercised their parental rights to direct the upbringing of their children by securing a private therapist for B.F. and requested that staff not engage with their children, but actively and intentionally defied the parents' instructions by soliciting and participating in private meetings with B.F. and referring B.F. to Defendant Funke for private meetings aimed at facilitating and promoting social transitioning to a discordant gender identity without the knowledge and consent of her parents.

**Allegations Against Defendant Funke**

179.   Defendant Funke, when school librarian at Baird Middle School, acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that a) Ms. Funke knew or should have known that the DESE Guidance is not a legal mandate but claimed that it requires that school staff conceal information from parents; b) Ms. Funke knew or should have known that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claimed that it supports Defendants' Protocol that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Ms. Funke knew or should have known that under Massachusetts law parents have sole control and access to information in their child's records until

49

the child is age 14 or in the ninth grade, but deliberately concealed information and directed others to deliberately conceal information from parents of children under age 14 unless the child consents; d) Ms. Funke knew or should have known that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but nonetheless encouraged, facilitated, promoted and implemented gender-affirming social transitioning, a known mental health treatment, with children under age 18  without informing or gaining consent from parents.

180. Defendant Funke acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Funke knew or should have known that Plaintiffs Foote and Silvestri had exercised their parental rights to direct the upbringing of their children by securing a private therapist for B.F. and requested that school staff not engage with their children regarding mental health issues, but actively engaged with B.F. regarding gender-affirming social transitioning without Plaintiffs' consent.

181. Defendant Funke acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Funke actively defied the parents' instructions by meeting privately with B.F. and G.F. and promoting social transitioning through private meetings and conversations, recommendation of and referral to advocacy-driven sites, materials and activities to

experiment with discordant gender identities and socially transition without the knowledge and consent of their parents.

**General Allegations**

182.   By approving and implementing the Protocol, all Defendants have and are explicitly and intentionally excluding Plaintiffs from significant decision-making directly related to their children's upbringing and care in a manner that Defendants know to be contrary to law.

183.   Defendants' reckless disregard for Plaintiffs' rights has resulted in and is resulting in deprivation of their fundamental constitutional rights.

184.   Plaintiffs' constitutionally protected right to direct the upbringing of their children was violated as the plainly obvious consequence of Defendants' actions in intentionally and explicitly concealing information and purposefully deceiving Plaintiffs in accordance with and through implementation of the Protocol.

185.   Plaintiffs' constitutionally protected right to direct the upbringing of their children was violated as the plainly obvious consequence of Defendants' actions in, *inter alia,* a) meeting secretly with their children to engage in counseling and advocacy related to mental health and discordant gender identity without parental notice and consent, b) deceiving parents by using one set of names and pronouns when communicating with them and another at school, c) directing children to speak untruthfully by instructing them to use alternate gender pronouns

and names for their peers, d) actively defying Plaintiffs' explicit instructions to not engage in mental health discussions with their children, e) actively and intentionally nurturing distrust for parents through secret meetings in which parents' decisions and ability to act in the best interest of their children are questioned, and f) publicly dismissing and demeaning parents' challenges to the Protocol as "bigotry" driven by outside groups and pledging to continue to defy parental rights.

186. Defendants cannot assert a compelling interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the upbringing, care, and custody of their children, and Defendants' protocol and actions in furtherance thereof is not narrowly tailored.

187. Defendants' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

188. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their fundamental rights.

## SECOND CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983
### (Violation of Plaintiffs' Fundamental Parental Right to Direct the Medical and Mental Health Decision-making for Their Children Under the U.S. Constitution)
### (By All Plaintiffs Against all Defendants)

189. Plaintiffs incorporate the factual allegations in paragraphs 9-162 by reference as if set forth in full.

190.   The Due Process Clause in the 14th Amendment to the United States Constitution protects the fundamental right of parents to direct the medical and mental health decision-making for their children. *Parham v. J. R*., 442 U.S. 584 (1979). *See also, Custody of a Minor*, 375 Mass. 733, 747 (1978) (Parents, as the "natural guardians of their children," have the right to consent to routine, non-emergency treatment of a minor child).

191.   Social transitioning, or affirming a child's asserted discordant gender identity involves significant mental health and medical decisions affecting the well-being of children with potentially life-long consequences.

192.   Defendants' adoption and implementation of the Protocol that directs school administrators, teachers, counselors and staff to conceal from parents information and decisions regarding their children's assertion of a discordant gender identity and gender-affirming social transitioning (mental health treatment), and deceive parents by using given names and pronouns in their presence and children's preferred names and pronouns at all other times unless the children consent, infringes Plaintiffs' fundamental constitutional right as fit parents to make mental health decisions for their children.

193.   In adopting and implementing the Protocol, Defendants have usurped Plaintiffs' responsibility for the health and well-being of their children and sought to substitute their authority for Plaintiffs' authority as fit parents to be the ultimate

decisionmakers regarding the physical and mental health of their children, including decisions related to their children's assertion of discordant gender identities and request to socially transition, which is a known mental health treatment for gender dysphoria.

194.   Defendants have violated and are violating Plaintiffs' fundamental right to make decisions regarding the mental health of their children by adopting and implementing the Protocol providing that a) Parents are not to be informed if their children express a discordant gender identity and ask to socially transition unless the children consent; b) Parents are presumed to pose a danger to their children's health and well-being if informed of their child's assertion of a discordant gender identity and desire to socially transition; c) Parents are to be intentionally misled and lied to when school staff discuss their children, in that staff are to use the children's legal name and biologically accurate pronouns when talking to parents but not in other circumstances; and d) Parents' directives that school staff not interfere with parents' decisions regarding therapy for their children are to be ignored.

195.   By excluding parents from discussions regarding their children's assertion of a discordant gender identity and adopting and implementing the Protocol requiring secrecy unless children consent, Defendants have made and continue to make decisions that affect the mental health of Plaintiffs' children in contravention of Plaintiffs' fundamental rights as enumerated in the U.S. Constitution.

196.   Defendants have acted and continue to act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience as described *infra.*

**Allegations Regarding School Committee and Town**

197.   Defendant School Committee, acting as final policymaker for Defendant Town, has acted and continues to  act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that a) The School Committee knows that the DESE Guidance is not a legal mandate but claims that it requires that school staff conceal information from parents; b) The School Committee knows that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claims that it supports Defendant's Protocol that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) The School Committee knows that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but sanctions the deliberate concealment of information from parents of children under age 14 unless the child consents; d) The School Committee knows that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but has approved and implemented a Protocol that directs staff to encourage, facilitate, promote and implement gender-

affirming social transitioning, a known mental health treatment, with children under age 18  without informing or gaining consent from parents.

**Allegations Against Defendant Gazda**

198.  Defendant Gazda, as superintendent charged with implementing policies sanctioned by the School Committee, through June 2021, acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that a) Mr. Gazda knew that the DESE Guidance is not a legal mandate, but claimed that it requires that school staff conceal information from parents; b) Mr. Gazda knew that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claimed that it supports Defendants' Protocol that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Mr. Gazda knew that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but directed school staff to deliberately conceal information from parents of children under age 14 unless the child consents; d) Mr. Gazda knew that under Massachusetts law, parents must be informed of and consent to medical/mental health care for their children who are under 18, but approved and implemented a Protocol that directs staff to facilitate and encourage gender-affirming social transitioning, a known mental health treatment, with children under age 18 without informing or obtaining consent from parents.

199. Defendant Gazda, as superintendent charged with implementing policies sanctioned by the School Committee, through June 2021 acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Mr. Gazda knew that Plaintiffs Foote and Silvestri had exercised their parental right to make mental health decisions for their children by securing a private therapist for B.F. and requested that school staff not engage with their children regarding mental health issues, but failed to adequately supervise and train employees to not implement the Protocol or actively encouraged employees to implement the Protocol and engage with Plaintiffs' children without notifying Plaintiffs.

200. Defendant Gazda acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Mr. Gazda publicly stated during School Committee meetings that parents with concerns about not being notified and their decisions not being honored regarding their children's gender identity issues were driven by "prejudice and bigotry," and "under the spell" of "outside groups," and that school officials would continue with their policies regardless of what parents thought or instructed.

**Allegations Against Defendant Nemeth**

201. Defendant Nemeth, as interim superintendent charged with implementing policies sanctioned by the School Committee, since June 2021 has

acted and is acting with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that a) Ms. Nemeth knows that the DESE Guidance is not a legal mandate, but claims that it requires that school staff conceal information from parents; b) Ms. Nemeth knows that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claims that it supports Defendants' Protocol that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Ms. Nemeth knows that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but directs school staff to deliberately conceal information from parents of children under age 14 unless the child consents; d) Ms. Nemeth knows that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but implements a Protocol that directs staff to encourage, facilitate, promote and implement gender-affirming social transitioning, a known mental health treatment, with children under age 18  without informing or obtaining consent from parents.

**Allegations Against Defendant Monette**

202.   Defendant Monette, as principal of Baird Middle School charged with implementing policies sanctioned by the School Committee at the school, has acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that

shocks the conscience in that a) Ms. Monette knew or should have known that the DESE Guidance is not a legal mandate, but claimed that it requires that school staff conceal information from parents; b) Ms. Monette knew or should have known that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claimed that it supports Defendants' Protocol that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Ms. Monette knew or should have known that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but directed school staff to deliberately conceal information from parents of children under age 14 unless the child consents; d) Ms. Monette knew or should have known that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but implemented a Protocol that directs staff to encourage, facilitate, promote and implement gender-affirming social transitioning, a known mental health treatment, with children under age 18 without informing or gaining consent from parents.

203. Defendant Monette as principal of Baird Middle School acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Monette knew that Plaintiffs Foote and Silvestri had exercised their parental right to make mental health decisions for their children by

securing a private therapist for B.F. and requested that school staff not engage with their children regarding mental health issues, but failed to adequately supervise and train employees to not implement the Protocol or actively encouraged employees to implement the Protocol and engage with Plaintiffs' children without notifying Plaintiffs.

### Allegations Against Defendant Foley

204.   Defendant Foley as school counselor at Baird Middle School has acted and continues act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that a) Ms. Foley knows or should have known that the DESE Guidance is not a legal mandate, but claims that it requires that school staff conceal information from parents; b) Ms. Foley knows or should have known that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claims that it supports Defendants' Protocol that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Ms. Foley knows or should have known that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but deliberately concealed information and directed others to deliberately conceal information from parents of children under age 14 unless the child consents; d) Ms. Foley knows or should have known that under Massachusetts law parents must be informed of and

consent to medical/mental health care for their children who are under 18, but encouraged, facilitated, promoted and implemented gender-affirming social transitioning, a known mental health treatment, with children under age 18 without informing or gaining consent from parents; e) Ms. Foley knows or should have known that under Massachusetts law parents have sole control over their children's information until children are 14 years old or in grade nine and that parents must consent to mental health treatment for their children, but told Baird Middle School staff that the law did not require providing information related to gender identity to parents of children under age 14..

205.   Defendant Foley acted and continues to act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Foley knew that Plaintiffs Foote and Silvestri had exercised their parental rights to make mental health decisions for their children by securing a private therapist for B.F. and requested that school staff not engage with their children regarding mental health issues, but actively engaged with B.F. regarding her mental health issues related to a discordant gender identity without notifying Plaintiffs.

206.   Defendant Foley acted and continues to act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Foley knew that Plaintiffs Foote and Silvestri had exercised their parental rights to make mental health decisions for their children by securing a private therapist for

B.F. and requested that staff not engage with their children, but actively defied the parents' instructions by soliciting and participating in private meetings with B.F. and questioning whether B.F.'s parents could keep her safe or provide proper therapeutic care.

207.   Defendant Foley acted and continues to act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Foley knew that Plaintiffs Foote and Silvestri had exercised their parental rights to make mental health decisions for their children by securing a private therapist for B.F. and requested that staff not engage with their children, but actively defied the parents' instructions by soliciting and participating in private meetings with B.F. and referring B.F. to Defendant Funke for private meetings aimed at facilitating and promoting B.F.'s gender-affirming social transitioning to a discordant gender identity without the knowledge and consent of her parents.

**Allegations Against Defendant Funke**

208.   Defendant Funke when school librarian at Baird Middle School acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that a) Ms. Funke knew or should have known that the DESE Guidance is not a legal mandate, but claimed that it requires that school staff conceal information from parents; b) Ms. Funke knew or should have known that the DESE Guidance suggests only that school staff should speak to students before

speaking to parents, but claimed that it supports Defendants' Protocol that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Ms. Funke knew or should have known that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but deliberately concealed information from parents of children under age 14 unless the child consents; d) Ms. Funke knew or should have known that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but encouraged, facilitated, promoted and implemented gender-affirming social transitioning, a known mental health treatment, with children under age 18  without informing or gaining consent from parents.

209.  Defendant Funke acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Funke knew or should have known that Plaintiffs Foote and Silvestri had exercised their parental rights to make mental health decisions for their children by securing a private therapist for B.F. and requested that school staff not engage with their children regarding mental health issues, but actively engaged with B.F. regarding gender-affirming social transitioning without Plaintiffs' consent.

210.  Defendant Funke acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Funke

actively defied the parents' instructions by meeting privately with B.F. and G.F. and encouraging them through conversations, materials, internet sites, and recommended activities to experiment with discordant gender identities and socially transition without the knowledge and consent of their parents.

### General Allegations

211.   Defendants' reckless disregard for Plaintiffs' rights has resulted in and continues to result in deprivation of their fundamental constitutional rights.

212.   Plaintiffs' constitutionally and statutorily protected rights to make decisions regarding the mental health of their children was violated as the plainly obvious consequence of Defendants' actions in adopting and implementing the Protocol that intentionally concealed from Plaintiffs information regarding their children's assertion of discordant gender identities and gender-affirming social transitioning, recognized mental health treatments.

213.   Plaintiffs' constitutionally protected right to make mental health decisions for their children was violated as the plainly obvious consequence of Defendants' actions in, *inter alia,* a) meeting secretly with their children to engage in counseling and advocacy related to mental health and discordant gender identity without parental notice and consent, b) deceiving parents by using one set of names and pronouns when communicating with them and another at school, c) directing children to speak untruthfully by instructing them to use alternate gender pronouns

and names for their peers, d) actively defying Plaintiffs' instructions to not engage in mental health discussions with their children, d) actively and intentionally nurturing distrust for parents through secret meetings in which parents' decisions and ability to provide for their children are questioned, and e) publicly dismissing and demeaning parents' challenges to the Protocol as "bigotry" driven by outside groups and pledging to continue to defy parental rights.

214.    Defendants cannot assert a compelling interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the medical and mental health care for their children.

215.    Defendants' prohibition against parental notification is not narrowly tailored.

216.    Defendants' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

217.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their fundamental rights.

**THIRD CAUSE OF ACTION**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983**
**(Violation of Plaintiffs' Right to Familial Privacy Under the U.S. Constitution)**
**(By All Plaintiffs Against all Defendants)**

218.    Plaintiffs incorporate the factual allegations in paragraphs 9-162 by reference as if set forth in full.

219.   The Due Process Clause in the 14th Amendment to the United States Constitution protects the sanctity of the family as an institution deeply rooted in this Nation's history and tradition through which moral and cultural values are passed down. *Moore v. East Cleveland*, 431 U.S. 494, 503-04 (1977). The Constitution protects the private realm of the family from interference by the state. *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944).

220.   In substituting their judgment regarding the mental health and identity of B.F., G.F., and other Ludlow Public Schools students for the judgment of their parents by implementing the Protocol to withhold information regarding children's assertion of a discordant gender identity and request to affirm that identity without notifying the parents, Defendants have impermissibly inserted themselves into the private realm of Plaintiffs' families by usurping Plaintiffs' rights to make decisions regarding their children's upbringing, mental health, and well-being.

221.   In substituting their judgment for the judgment of parents by refusing to inform parents or comply with parents' instructions when their children disclose a discordant gender identity and seek affirmation of the identity at school without notifying the parents, Defendants have impermissibly inserted themselves into the private realm of Plaintiffs' families by depriving B.F., G.F., and other minor Ludlow Public Schools students of their right to have decisions regarding their upbringing, mental health and well-being made by their parents.

222. Defendants have infringed Plaintiffs' right to family privacy by adopting and implementing the Protocol and associated procedures which send the message to children that their parents cannot be trusted to be informed of or to make decisions related to their assertion of a discordant gender identity.

223. Defendants School Committee, acting as final policymaker for the Town, and Gazda have explicitly evidenced their hostility toward Plaintiffs' rights to familial privacy and intent to infringe upon family privacy through public statements that Defendants' schools are the only safe space for many children, that parental concerns about their children proclaiming a discordant gender identities are rooted in bigotry, and that school officials will continue to defy parental requests to be informed about children's gender-affirming social transitioning.

224. Through their implementation of the Protocol and public statements denigrating parents who disagree with the Protocol, Defendants have sent and continue to send the message to Plaintiffs' children that their parents cannot be trusted to make decisions or act in their children's best interests, thereby impermissibly inserting themselves into the private realm of Plaintiffs' family and creating discord between parents and their children.

225. Defendants have acted and are acting with reckless disregard for Plaintiffs' rights to family privacy by their actions in intentionally casting doubt on parents' ability to respond appropriately to their children's expression of discordant

gender identities and excluding parents from decision-making related to their children's questions regarding their sex and gender identity.

226.   Defendants have acted and are acting with reckless disregard for Plaintiffs' rights to family privacy by their actions in giving children the power to determine whether their parents can be informed about their children's discordant gender identity and gender-affirming social transitioning, thereby disrupting the family dynamic in a way contrary to the law's provision of decision-making authority to parents.

227.   Defendants have acted and are acting with reckless disregard for Plaintiffs' fundamental right to family privacy in a manner that shocks the conscience as described *infra.*

**Allegations Regarding School Committee and Town**

228.   Defendant School Committee, acting as final policymaker for Defendant Town, has acted and is acting with reckless disregard for Plaintiffs' fundamental right to family privacy in a manner that shocks the conscience in that a) The School Committee knows that the DESE Guidance is not a legal mandate but claims that it requires that school staff conceal information from parents; b) The School Committee knows that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claims that it permits the reversal of parent and child roles by providing that parents are not to be told about

children's gender-affirming social transitioning unless the minor child consents; c) The School Committee knows that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but sanctions deliberately concealing information from parents of children under age 14 unless the child consents; d) The School Committee knows that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but have approved a Protocol that directs staff to encourage, facilitate, develop and implement gender-affirming social transitioning, a known mental health treatment, with children under age 18  without informing or gaining consent from parents.

### Allegations Against Defendant Gazda

229.  Defendant Gazda as superintendent charged with implementing policies sanctioned by the School Committee through June 2021 acted with reckless disregard for Plaintiffs' fundamental right to family privacy in a manner that shocks the conscience in that a) Mr. Gazda knew that the DESE Guidance is not a legal mandate but claimed that it requires that school staff conceal information from parents; b) Mr. Gazda knew that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claimed that it permits the reversal of parent and child roles by providing that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Mr.

Gazda knew that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but directed school staff to deliberately conceal information from parents of children under age 14 unless the child consents, thereby reversing the roles of parents and children; d) Mr. Gazda knew that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but approved and implemented a Protocol that directs staff to encourage, facilitate, promote and implement gender-affirming social transitioning, a known mental health treatment, with children under age 18  without informing or obtaining consent from parents.

230.   Defendant Gazda, as superintendent charged with implementing policies sanctioned by the School Committee, through June 2021 acted with reckless disregard for Plaintiffs' fundamental right to family privacy in a manner that shocks the conscience in that Mr. Gazda knew that Plaintiffs Foote and Silvestri had exercised their rights as parents to provide mental health care through a private therapist and requested that school staff respect their rights and not engage with their children, but failed to adequately supervise and train employees to not implement the Protocol or actively encouraged employees to defy Plaintiffs' directions and engage with Plaintiffs' children without notifying Plaintiffs.

231. Defendant Gazda acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Mr. Gazda publicly stated during School Committee meetings that parents with concerns about not being notified and their decisions not being honored regarding their children's gender identity issues were driven by "prejudice and bigotry," and "under the spell" of "outside groups," and that school officials would continue with their policies regardless of what parents thought.

**Allegations Against Defendant Nemeth**

232. Defendant Nemeth, as interim superintendent charged with implementing policies sanctioned by the School Committee, since June 2021 has acted and is acting with reckless disregard for Plaintiffs' fundamental right to family privacy in a manner that shocks the conscience in that a) Ms. Nemeth knows that the DESE Guidance is not a legal mandate but claims that it requires that school staff conceal information from parents; b) Ms. Nemeth knows that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claims that it permits the reversal of parent and child roles by providing that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Ms. Nemeth knows that under Massachusetts law parents have sole control and access to information in their child's records until the child is age14 or in the ninth grade, but directs school staff to deliberately conceal

information from parents of children under age 14 unless the child consents; d) Ms. Nemeth knows that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but implements a Protocol that directs staff to encourage, facilitate, promote and implement gender-affirming social transitioning, a known mental health treatment, with children under age 18  without informing or gaining consent from parents.

### Allegations Against Defendant Monette

233.   Defendant Monette, as principal of Baird Middle School charged with implementing policies sanctioned by the School Committee at the school, has acted with reckless disregard for Plaintiffs' fundamental  right to familial privacy in a manner that shocks the conscience in that a) Ms. Monette knew or should have known that the DESE Guidance is not a legal mandate but claimed that it requires that school staff conceal information from parents; b) Ms. Monette knew or should have known that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claimed that it permits the reversal of parent and child roles by providing that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Ms. Monette knew or should have known that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but directed school staff to deliberately conceal information from parents of

children under age 14 unless the child consents; d) Ms. Monette knew or should have known that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but implemented a Protocol that directs staff to encourage, facilitate, promote and implement gender-affirming social transitioning, a known mental health treatment, with children under age 18 without informing or gaining consent from parents.

234.   Defendant Monette as principal of Baird Middle School acted with reckless disregard for Plaintiffs' fundamental right to familial privacy in a manner that shocks the conscience in that Ms. Monette knew that Plaintiffs Foote and Silvestri had exercised their rights as parents to provide mental health care through a private therapist and requested that school staff respect their rights and not engage with their children, but failed to adequately supervise and train employees to not implement the Protocol or actively encouraged employees to defy Plaintiffs' directions and engage with Plaintiffs' children without notifying Plaintiffs.

**Allegations Against Defendant Foley**

235.   Defendant Foley, as school counselor at Baird Middle School, has acted and continues act with reckless disregard for Plaintiffs' fundamental right to family privacy in a manner that shocks the conscience in that a) Ms. Foley knows or should have known that the DESE Guidance is not a legal mandate but claims that it requires that school staff conceal information from parents; b) Ms. Foley knows or should

have known that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claims that it permits the reversal of parent and child roles by providing that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Ms. Foley knows or should have known that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but deliberately concealed information and directed others to deliberately conceal information from parents of children under age 14 unless the child consents; d) Ms. Foley knows or should have known that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but encouraged, facilitated, promoted and implemented gender-affirming social transitioning, a known mental health treatment, with children under age 18  without informing or gaining consent from parents.

236.   Defendant Foley acted and continues to act with reckless disregard for Plaintiffs' fundamental  right to familial privacy in a manner that shocks the conscience in that Ms. Foley knew that Plaintiffs Foote and Silvestri had exercised their rights as parents to provide mental health care through a private therapist and requested that school staff respect their rights and not engage with their children on these matters, but intentionally defied Plaintiffs' directions and engaged with

Plaintiffs' children without notifying Plaintiffs, thereby inserting herself into the family dynamic in violation of Plaintiffs' right to family privacy.

237.   Defendant Foley acted and continues to act with reckless disregard for Plaintiffs' fundamental  right to familial privacy in a manner that shocks the conscience in that Ms. Foley knew that Plaintiffs Foote and Silvestri had exercised their rights as parents to provide mental health care through a private therapist and requested that school staff respect their rights and not engage with their children on these matters, but actively defied the parents' instructions by soliciting and participating in private meetings with B.F. and questioning whether B.F.'s parents could keep her safe or provide proper therapeutic care.

238.   Defendant Foley acted and continues to act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Foley knew that Plaintiffs Foote and Silvestri had exercised their rights as parents to provide mental health care through a private therapist and requested that school staff respect their rights and not engage with their children on these matters, but actively defied the parents' instructions by referring B.F. to Defendant Funke for private meetings aimed at facilitating and promoting gender-affirming social transitioning to a discordant gender identity without the knowledge and consent of her parents.

**Allegations Against Defendant Funke**

239.   Defendant Funke, when school librarian at Baird Middle School, acted with reckless disregard for Plaintiffs' fundamental right to familial privacy in a manner that shocks the conscience in that a) Ms. Funke knew or should have known that the DESE Guidance is not a legal mandate but claimed that it requires that school staff conceal information from parents; b) Ms. Funke knew or should have known that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claimed that it permits the reversal of parent and child roles by providing that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Ms. Funke knew or should have known that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but deliberately concealed information and directed others to deliberately conceal information from parents of children under age 14 unless the child consents; d) Ms. Funke knew or should have known that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but encouraged, facilitated, promoted and implemented gender-affirming social transitioning, a known mental health treatment, with children under age 18 without informing or gaining consent from parents.

240. Defendant Funke acted with reckless disregard for Plaintiffs' fundamental right to family privacy in a manner that shocks the conscience in that Ms. Funke knew or should have known that Plaintiffs Foote and Silvestri had exercised their parental rights by securing a private therapist for B.F. and requested that school staff not engage with their children regarding mental health issues, but actively engaged with B.F. regarding gender-affirming social transitioning without Plaintiffs' consent thereby impermissibly inserting herself into the Plaintiffs' family dynamic.

241. Defendant Funke acted with reckless disregard for Plaintiffs' fundamental right to family privacy in a manner that shocks the conscience in that Ms. Funke actively defied the parents' instructions by meeting privately with B.F. and G.F. and encouraging them through conversations, materials, internet sites, and recommended activities to experiment with discordant gender identities and socially transition without the knowledge and consent of their parents.

**General Allegations**

242. Defendants' deliberate indifference to Plaintiffs' rights has resulted in and continues to result in deprivation of their constitutional rights to family privacy.

243. Plaintiffs' constitutionally protected rights to family privacy were violated as the plainly obvious consequence of Defendants' actions in intentionally and explicitly withholding information in accordance with the Protocol that parents

were not to be notified when their children assert a discordant gender identity and seek to socially transition unless the children consent.

244.    Plaintiffs' constitutionally protected right to family privacy was violated as the plainly obvious consequence of Defendants' actions in, *inter alia,* a) meeting secretly with their children to engage in counseling and ideologically-driven advocacy related to mental health and discordant gender identity without parental notice and consent, b) deceiving parents by using one set of names and pronouns when communicating with them and another at school, c) directing children to speak untruthfully by instructing them to use alternate gender pronouns and names for their peers, and d) nurturing distrust for parents through secret meetings in which parents' decisions and ability to act in the best interest of their children are questioned, thus disrupting the parent-child relationship.

245.    Defendants cannot assert a compelling state interest for recklessly disregarding Plaintiffs' constitutional rights to family privacy.

246.    Defendants' prohibitions against parental notification and unauthorized involvement in children's mental health decisions related to gender identity are not narrowly tailored.

247.    Defendants' violation of Plaintiffs' constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm in that Plaintiffs have been and are being denied their right to direct decisions concerning the

upbringing and mental health care for their children without interference from the state, and their children are denied the right to have upbringing and mental health decisions made by their parents in keeping with their family values, advice of the family's mental health professionals, and their sincerely held religious beliefs.

248.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their fundamental rights.

<div align="center">

**FOURTH CAUSE OF ACTION**
**Violation of Civil Rights, 42 U.S.C.  § 1983**
**(Violation of Plaintiffs' Right to Free Exercise of Religion Under the U.S.**
**Constitution)**
**(By Plaintiffs Feliciano and Salmeron Against all Defendants)**

</div>

249.   Plaintiffs incorporate the factual allegations in paragraphs 9-162 by reference as if set forth in full.

250.   The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiffs' right to free exercise of religion.

251.   Plaintiffs have sincerely held Biblically-based religious beliefs that human beings are created male or female and that the natural created order regarding human sexuality cannot be changed regardless of individual feelings, beliefs, or discomfort with one's identity, and biological reality, as either male or female.

252.   Plaintiffs have Biblically-based sincerely held religious beliefs that parents have the non-delegable duty to direct the upbringing and beliefs, religious

<div align="center">79</div>

training, and medical and mental health care of their children, that children are to respect their parents' authority, and that any intrusion of the government into that realm infringes upon the free exercise of their religion.

253.   Plaintiffs have sincerely held Biblically-based religious beliefs that all people are to be treated with respect and compassion, and that respect and compassion do not include misrepresenting an individual's natural created identity as either a male or a female.

254.   Plaintiffs have sincerely held religious beliefs that individuals are to speak the truth, including speaking the truth regarding matters of sexual identity as a male or female.

255.   Defendants' actions in excluding Plaintiffs Feliciano and Salmeron from decision making regarding their children's sexual and gender identity target the Plaintiffs' beliefs regarding the created order, human nature, sexuality, gender, parental authority, and morality which constitute central components of their sincerely held religious beliefs.

256.   Defendants' actions have caused a direct and immediate conflict with Plaintiffs' religious beliefs by prohibiting them from being informed of mental health issues their children are or might be experiencing and by denying them the opportunity to seek counseling and guidance for their children in a manner that is consistent with the beliefs sincerely held by their family instead of the government.

257.   Defendants' actions are coercive in that they deliberately supplant Plaintiffs' role as advisors of the moral and religious development of their children so that they are not able to direct their children's mental health care, counseling, and beliefs regarding sex and gender identity in accordance with their values because Defendants have substituted and supplanted the state's perspective on the issues of sex and gender identity for the perspective of Plaintiffs in violation of Plaintiffs' free exercise rights.

258.   Defendants' actions are neither neutral nor generally applicable, but rather, specifically and discriminatorily target the religious speech, beliefs, and viewpoint of Plaintiffs and, thus, expressly constitute a substantial burden on sincerely held religious beliefs that are contrary to Defendants' viewpoint regarding gender identity and affirmation of a discordant gender identity.

259.   No compelling state interest justifies the burdens Defendants have imposed and are imposing on Plaintiffs' rights to the free exercise of religion.

260.   Defendants' actions are not the least restrictive means to accomplish any permissible government purpose Defendants seek to serve.

261.   Defendants' violation of Plaintiffs' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs to suffer undue and actual hardships.

262.   Defendants' violation of Plaintiffs' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs to suffer irreparable injury. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

1.  A declaration that Defendants have violated Plaintiffs' fundamental rights as parents, under the United States Constitution and other laws to the extent that they: a) have approved and implemented a Protocol to conceal from parents when their children express a discordant gender identity and are being socially transitioned, unless the children consent; b) actively implement and reinforce the Protocol through surreptitious meetings with minor children to discuss gender identity, socially transition, and promote experimenting with alternative gender identities without the knowledge or consent of their parents; c) actively and intentionally nurture in children distrust of their parents by questioning the parents' care for their children during secret meetings of which the parents are not aware nor consent to; and d) actively and intentionally direct school staff to deceive parents by using given names and pronouns in communications with parents but otherwise affirming a minor child's preferred gender discordant name and pronouns.

2.  A declaration that teachers and staff: a) may not facilitate a child's social transition to a different gender identity at school without parental notification and consent; b) must communicate with parents if they have reason to believe their child may be dealing with gender confusion or dysphoria, without first obtaining the child's consent; and c) may not attempt to deceive parents by, *inter alia,* using different names and pronouns around parents than are used in school;

3.  A declaration that the Protocol and any associated policies, procedures, and practices are to be publicly rescinded and that parents be notified that the Protocol and associated policies and procedures have been rescinded.

4.  Preliminary and permanent injunctions prohibiting Defendants, their employees, agents and third parties acting at their direction, from: a) Using, referencing, relying on, or otherwise acting upon the Protocol and associated policies and procedures fostering secrecy from parents as guidance for Ludlow Public Schools' staff and administrators; b)   Training staff to exclude parents from discussions, meetings, and other interventions with the parents' children related to their children's assertion of a discordant gender identity and desire to socially transition; c) Failing to notify parents when their children express the belief that they have a discordant gender identity and want to take actions to affirm that identify; d) Failing or refusing to abide by parents' instructions concerning their children's discordant gender identity; e) Meeting with children to discuss, promote, or engage

83

in counseling regarding the children's discordant gender identity and desire to socially transition without notice to and the consent of their parents.

5.   Preliminary and permanent injunctions prohibiting Defendants, their employees, agents and third parties acting at their direction from instructing, directing, or encouraging Ludlow Public Schools staff to participate in programs, initiatives, activities, or discussions in which Ludlow Public Schools staff promise children that their parents will not be told about the children's disclosures about a discordant gender identity or that they are socially transitioning at school.

6.   For nominal damages;

7.   For compensatory damages according to proof for the injuries caused by Defendants' acts and omissions, as proven at trial;

8.   For attorneys' fees and costs under 42 U.S.C. § 1988;

9.   For such other relief as the Court deems proper.

Dated: June  21, 2022.

<div style="margin-left:40%">

Andrew Beckwith
MA Bar No.  657747
Massachusetts Family Institute
401 Edgewater Place, Suite 580
Wakefield, MA 01880
781.569.0400
andrew@mafamily.org

*/s/Mary E. McAlister*
Vernadette R. Broyles (GA Bar No. 593026)*
Mary E. McAlister (VA Bar No. 76057)*

</div>

84

CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
5805 State Bridge Rd., Suite G310
Johns Creek, GA 30097
770.448.4525
vbroyles@childparentrights.org
mmcalister@childparentrights.org
*admitted pro hac vice
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically with the Court on June 21, 2022. Service will be effectuated by the Court's electronic notification system upon all counsel or parties of record.

*/s/Mary E. McAlister*
Mary E. McAlister